557 F.2d 1015
 16 Fair Empl.Prac.Cas. 963, 14 Empl. Prac.
Dec. P 7681
Jean H. PRANDINI, Individually, and on behalf of all other
persons similarly situated, Appellants,
v.
NATIONAL TEA COMPANY and the Amalgamated Food Employees
Union Local 590.
 No. 76-2190.
 United States Court of Appeals,
Third Circuit.
 Submitted under Third Circuit Rule 12(6) March 31, 1977.
Decided June 29, 1977.
 
 Michael P. Malakoff, Louise R. Malakoff, Berger, Kapetan & Malakoff, and Martin Lubow, Pittsburgh, Pa., for appellants.
 Walter P. DeForest, Reed, Smith, Shaw & McClay, and J. M. Maurizi, Balzarini, Walsh & Maurizi, Pittsburgh, Pa., for appellees.
 Before ADAMS, ROSENN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 In certain types of litigation, a successful plaintiff may receive attorneys' fees in addition to the customary damages for his claim. Although the negotiation of a fee contemporaneously with the evaluation of damages may be conducted with diligence and honesty, the potential for impropriety gives rise to possible misunderstanding by the public. We agree with the district court's disapproval of the procedure, but remanded for further findings of fact necessary in calculation of reasonable fees.
 
 
 2
 As part of the settlement of a class action based upon sex discrimination in employment, counsel for the class requested court approval of statutorily authorized attorneys' fees. 42 U.S.C. § 2000e-5(k). The proposed settlement petition provided for payment to the class of $97,000, later recalculated to $99,664, and recited the parties' agreement on counsel fees:
 
 
 3
 "6. Within ninety days after final dismissal of Civil Action No. 72-870, Defendant National Tea Company shall pay Plaintiffs' attorney's fees in the following amounts:
 
 
 4
 a. The sum of TWENTY-FOUR THOUSAND DOLLARS ($24,000) to Berger & Kapetin;
 
 
 5
 b. The sum of SIXTEEN THOUSAND DOLLARS ($16,000) to Rosenberg & Lubow; and
 
 
 6
 c. The sum of TEN THOUSAND DOLLARS ($10,000) to Sylvia Roberts, Esquire."
 
 
 7
 An affidavit attached to the petition stated that at normal billing rates the fees of the Berger & Kapetan (later restyled Berger, Kapetan & Malakoff) and Rosenberg & Lubow firms would be $42,910, and that Sylvia Roberts' fee was based on a contractual right to receive 20% of the total attorneys' fees awarded. The petition suggested that normal billing rates should be increased by 20% because of the contingent nature of the case and the quality of the work. The petition also requested payment of $3,000 for expenses incurred, including amounts paid to experts, para-professionals, court reporters, postage, copying and similar items. There was no request for counsel fees to be paid from the fund itself.
 
 
 8
 At the hearing for approval of the settlement, the district judge expressed concern about the request for counsel fees, particularly with the allocation to Ms. Roberts based on a percentage referral arrangement rather than on work performed. The award to the class was approved, but a separate proceeding was scheduled to address the issue of attorneys' fees. At the outset of that hearing, the court stated its dissatisfaction with settlement proposals that include both allowances for attorneys' fees and payment to the class because the combination may create a possible conflict of interest.
 
 
 9
 Ms. Roberts submitted a letter and affidavit in which she disclaimed any interest in a "referral fee" or a "broker's fee" and submitted an itemization of the time that she had spent on the case. She suggested that an hourly charge of $100 would be reasonable for the 22.75 hours that she had devoted to the matter.
 
 
 10
 The district court awarded fees as follows:
 
 
 11
 No specific amount was awarded to Ms. Roberts, the court stating that she should be paid by counsel with whom she had consulted.
 
 
 12
 Beginning with the maximum of $50,000, to which defendants had agreed, the court began its calculations by first excluding the $10,000 "referral" fee as being forbidden by the Code of Professional Responsibility. The total was further reduced by $5,000 on the ground that Ms. Prandini, the named plaintiff, had received a $15,000 award but had borne no share of the attorneys' fees. The court stated that 331/3% was a reasonable share of her recovery which should have been charged by the attorneys, despite counsel's contention that Prandini had worked as a key punch operator in preparing the case. Thus, the fee fund was reduced to $35,000. In the settlement petition, the two firms had agreed to accept $24,000 and $16,000 respectively, and the court allocated the remaining fee fund in the same proportions.
 
 
 13
 This appeal was taken by Berger, Kapetan & Malakoff, the other firm, Rosenberg & Lubow, not contesting the amount awarded to it. The defendant has advised us that, since the company had agreed to pay a sum up to $50,000 if approved by the court, it did not contest the fee award in the district court. In the interest of consistency, the company did not deem it appropriate to dispute plaintiffs' counsel's position in this court and, accordingly, has not participated in the appeal. We are presented, therefore, with an ex parte appeal by counsel whose fee was reduced from the $24,000 it had settled upon with the defendant to $21,000 as determined by the court.
 
 
 14
 The awarding of counsel fees is a matter of discretion with the trial court, but we have provided objective standards to guide and facilitate the sound exercise of that discretion. Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973) (Lindy I ), and Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102 (3d Cir. 1976), (Lindy II ). The district court is required to employ the formula we devised and to articulate the values of its variable components. The total time expended and a reasonable hourly rate are the elements of the initial computation. That calculation in turn must be adjusted to reflect the quality of the work, benefit to the client, and contingency of the result in order to arrive at a reasonable value of the attorneys' services. If the district court applies this criterion to findings of fact which are not clearly erroneous, it acts within its discretion and the decision will not be disturbed, Lindy II, supra; Pitchford v. Pepi, Inc., 531 F.2d 92, 109 (3d Cir. 1975), cert. denied,426 U.S. 935, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976); Merola v. Atlantic Richfield Co., 493 F.2d 292 (3d Cir. 1974) (Merola I ), and Merola v. Atlantic Richfield Co., 515 F.2d 165 (3d Cir. 1975) (Merola II ).
 
 
 15
 The appellants assert that the court failed to make findings of fact on:
 
 
 16
 1. the number of hours expended by counsel;
 
 
 17
 2. a reasonable hourly rate;
 
 3. the contingency factor; and
 
 18
 4. the quality factor.
 
 
 19
 The district judge was aware of our holdings but did not make the required findings because of the posture in which the matter was presented to him. As his opinion explains, counsel had agreed that the total amount to be awarded was not to exceed $50,000, but the number of hours submitted multiplied by the requested rates came to $60,750.00.[1] The court, therefore, concluded that it could not award fees on the basis proposed and, instead, determined the compensation on a pro rata basis.
 
 
 20
 We recognize that the circumstances here differ from those in Lindy and the other cases in which we have applied the formula, but the computation described there should have first been followed. Then, proration should have been calculated by using the ratio of the total Lindy calculated fees to the total sum available. That ratio in turn should have been applied to the claims of each firm.[2] Since the underlying findings have not been made, we are unable to make the necessary calculations and must remand to the district court.[3]
 
 
 21
 The trial court's opinion, however, raises several important issues that require comment. The district judge found that the agreement to pay a percentage of the fee to referring counsel, without regard to the work she had performed, violated established standards of professional conduct, particularly DR2-107 of the American Bar Association Code of Professional Responsibility, Pa.Stat.Ann. tit. 42. That rule reads:
 
 
 22
 "A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:
 
 
 23
 (1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.
 
 
 24
 (2) The division is made in proportion to the services performed and responsibility assumed by each.
 
 
 25
 (3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client."
 
 
 26
 A division of fees based on a percentage without regard to work performed or responsibility assumed is not in compliance with the standard. Consequently, when he was asked to approve a fee based only upon the percentage agreement, the trial judge properly refused to approve the arrangement. The appellants contend that the judge's attention should have been directed "at what amount it is ethical to receive, not at what share it is ethical to agree upon." Farmington Dowell Products Co. v. Forster Mfg. Co., 436 F.2d 699 (1st Cir. 1970). But in disapproving the initial request for $10,000, the district judge was passing upon the amount to be received. To that extent we do not accept appellant's position.
 
 
 27
 After Ms. Roberts had submitted a claim for $2,275 based upon hourly charges, the court did not pass upon it but simply reduced the fee fund by $10,000. We agree with appellants that in this respect the court erred. Having been identified as a lawyer who represented the plaintiff and who had requested compensation, Ms. Roberts' fee should have been determined by the same standards applicable to the others and paid from the fee fund. The fund available should not have been reduced by the full $10,000.[4]
 
 
 28
 In appraising the fees requested by the Berger and Lubow firms, the district court was doubtful that hours expended is always a fair measurement of the value of legal services, stating at the hearing: " . . . I know many attorneys achieve results in two hours that takes another a week to get."[5] We do not disagree, and observe that the "quality" factor requires the court to adjust a fee on the basis of results of the work performed. Quality in this sense includes efficiency. If the attorney achieves good results with a minimum time expenditure, the total award may be increased to reflect efficiency and benefit to the client. Merola II, supra. Conversely, emphasis on the objective quantity of time spent should not shield wasteful or inefficient logging of hours from scrutiny, and the court should reduce the compensation when that practice occurs. Similarly, hours spent on purely clerical matters, easily delegable to nonprofessional assistants, should not be valued at legal service rates.[6] Lindy does not fetter a trial judge's ability to arrive at a reasonable fee but offers a principled means of achieving that result and, at the same time, provides an adequate record for appellate and public review.
 
 
 29
 The factors listed in the Lindy cases are helpful benchmarks whether the fees are awarded under a statutory grant or on the traditional common benefit theory. In Atlantic & Gulf Stevedores v. Director, etc., 542 F.2d 602, 609-10 (3d Cir. 1976), we required counsel moving for an award of fees under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 928(b), to provide the court with an affidavit in support of an application which conformed as closely as possible to the criteria articulated in Lindy. Pitchford, supra, and Merola, supra, also involved awards of fees authorized by statute.
 
 
 30
 We are aware of the differences in rationale underlying the awards of fees from a fund produced for the benefit of a class and those provided by statute. In the former case, the court exercises its equitable jurisdiction over the relationship between an attorney and his amorphous client, and factors which would appropriately have influenced the fee arrangement made between private parties, such as the contingency of litigation, are relevant. In the latter case, the statutory fee is often a part of the defendant's penalty for violating the applicable law. Contingency may be of little significance in that situation if the result is to give a smaller fee to the plaintiff's lawyer who recovers from a defendant in flagrant violation than the attorney who succeeds in establishing liability in a very close case. The contingency factor would be less where the liability is easily proved than where it is questionable. Hence, the penalty fastened on the defendant would vary in inverse proportion to the strength of the case against him. See Attorneys' Fees in Individual and Class Action Antitrust Litigation, 60 Calif.L.Rev. 1656 (1972).
 
 
 31
 The respective interests of lawyer and client may also vary, depending on whether the fee comes from a recovered fund or directly from the defendant in satisfaction of a separate obligation. In the common fund situation, the adverse interests are patent and the necessity for a court to recognize the equities of the absent and passive members of a class is obvious. When the statute provides that a fee is to be paid as a separate item, the conflict between client and attorney may not be as apparent, particularly in the event of settlement. It is often present nonetheless.
 
 
 32
 The district court concluded that it had been a mistake to approve the payment to the class separately because there was, in reality, only one fund for both the class and attorneys' fees. Reasoning that in cases of this nature a defendant is interested only in disposing of the total claim asserted against it, the court noted that the allocation between the class payment and the attorneys' fees is of little or no interest to the defense. As the court phrased it:
 
 
 33
 "The defendant is not faced with a group of claimants who are personally involved in the litigation, but only with one or a few representative parties whose award can be greatly increased over that of individual class members because of personal participation in the preparation of the case. In this case the sole representative plaintiff was awarded $15,000.00 for her initiation of the case and participation therein. The defendant deals with the representative party or parties and counsel who also represents the class. The impulse to treat opposing counsel and the representative party generously is an element that cannot be ignored."
 
 
 34
 The court went on to explain the unpleasant situation in which it found itself:
 
 
 35
 "Therefore, as devil's advocate, we must look at an agreement by defendants to pay counsel for the class a fee up to a certain maximum, as determined by the court, as having the potentiality of what is known in the labor field as a 'sweetheart contract.' This puts the judge who must determine its reasonableness and fairness in the posture of a 'bad guy.' None of the class members complained; counsel for the defendant does not complain; why should he interject himself into the arrangement?"
 
 
 36
 We are placed in the similar unfortunate position of considering an appeal ex parte and are thus deprived of adversarial presentations.
 
 
 37
 The district judge's sentiments about the conflict of interest and " sweetheart contract" problems have been expressed in other cases. City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974); City of Philadelphia v. Chas. Pfizer & Co., 345 F.Supp. 454 (S.D.N.Y.1972); Norman v. McKee,290 F.Supp. 29 (N.D.Cal.1968), aff'd, 431 F.2d 769 (9th Cir. 1970). The articulated difficulties are real and practical present in all cases where the defendant pays the plaintiff's lawyers, and particularly so in class actions.[7] The court does have the duty to see to it that the administration of justice has the appearance of propriety as well as being so in fact. In this case the district court properly exercised its responsibility by requiring public disclosure of the basis for the fees, even though the defendant had agreed to the amount.
 
 
 38
 However, we recognize that with the increasingly heavy burden upon the courts, settlements of disputes must be encouraged, and in the absence of special circumstances, such as those mentioned by the district court in this case, we doubt the necessity to completely exclude statutorily authorized attorneys' fees from that policy. A reasonable solution, we suggest, is for trial courts to insist upon settlement of the damage aspect of the case separately from the award of statutorily authorized attorneys' fees. Only after court approval of the damage settlement should discussion and negotiation of appropriate compensation for the attorneys begin. This would eliminate the situation found in this case of having, in practical effect, one fund divided between the attorney and client.
 
 
 39
 This procedure may not be particularly appealing to the parties, but it preserves the benefits of the adversary system since the defendant continues to have an economic interest. Moreover, the merits of fee disputes become separated from those of damages, thus reducing the conflict between client and attorney. This procedure would make the court's task less burdensome and remove a source of uneasiness over the settlement procedure without in any way impairing the power to set a proper fee.
 
 
 40
 The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Michael Malakoff (Berger, Kapetan &
 Malakoff),
287 hours at $75 -- $21,525.00
Louise Malakoff (Berger, Kapetan &
 Malakoff),
198.5 hours at $65 -- 13,752.00
Martin Lubow (Rosenberg & Lubow),
331.4 hours at $70 -- 23,198.00
Sylvia Roberts, 22.75 hours at $100 -- 2,275.00
 ----------
 $60,750.00
 
 
 [2]
 Counsel had agreed that the district court should award reasonable fees not in excess of $50,000. If the Lindy calculated fees were less than that amount, obviously no proration would be necessary
 
 
 [3]
 Appellants also argue that they had no duty to allocate a portion of their fee between this case and another, nearly identical, case in progress against a different defendant. In particular, an extensive brief on very similar points was filed at about the same time in both cases. We believe that the district court was correct in suggesting that double payment for the same effort should be avoided by some apportionment of the fee between the two cases. Counsel had prorated some of the hours charged to this case and the other
 
 
 [4]
 Similarly, we do not agree that the fee fund should have been reduced by the additional $5,000 attributable to a fee which might have been payable by Ms. Prandini. She had been awarded $15,000 by the court without any obligation to pay a fee from that amount. To suggest that counsel bill her thereafter is inconsistent with the court's approval of the damage aspect of the case
 
 
 [5]
 One commentator expressed the thought in this pithy sentence: "One thousand plodding hours may be far less productive than one imaginative, brilliant hour." Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658 (1956)
 
 
 [6]
 See Smith, Standards for Judicial Approval of Attorneys' Fees in Class Action and Complex Litigation, 20 Howard L.J. 22, 62, 63 (1977)
 
 
 [7]
 See Smith, supra n.6 at 73
 Another commentator states: "It is obvious that in such a case it is the attorneys, not the class members, who are the true beneficiaries and the real parties in interest. This plain fact is even more apparent in large antitrust settlements where many millions of dollars in fees are at stake . . . it is the small purchasers the supposed beneficiaries of class actions, who must pay these fees and other costs." Handler, The Shift From Substantive to Procedural Innovations in Antitrust Suits, 71 Colum.L.Rev. 1, 10 (1971). See also Attorneys' Fees in Individual and Class Action Antitrust Litigation, supra ; 7A C. Wright & A. Miller, Federal Practice and Procedure § 1803.
 This sharp criticism has not gone unchallenged. "But 'private' fees between lawyers and corporate clients also have a very substantial public character even though they are subject to no public supervision. * * * It is unlikely that a class member in the unfamiliar position of recouping an overcharge on a commodity he purchased years before would begrudge the lawyer who brought it to him 15 or even 25 percent of his 'windfall;' despite loose assertions to the contrary, I am unaware of any major antitrust class action where fees and expenses have seriously diminished the class recovery." Springer, Fee Awards in Antitrust Litigation, 44 Antitrust L.J. 97, 120-21 (1975).