Pearline E. FREEMAN and Bailey A. Freeman, Jr., Plaintiffs,

v.

B & B ASSOCIATES, et al., Defendants.

Civ. A. No. 83–1984.

United States District Court, District of Columbia.

Sept. 20, 1984.

David E. Fox, Washington, D.C., for plaintiffs.

Michael J. Friedman, Rockville, Md., for defendants B & B Associates and W. Lawrence Brantley.

William Daniel Sullivan, Melrod, Redman & Gartlan, A Professional Corporation, Washington, D.C., for defendant Beatrice B. Brantley.

## MEMORANDUM

OBERDORFER, District Judge.

This Truth-in-Lending case is before the Court on the plaintiff's petition for an award of attorneys' fees against defendants B & B Associates, W. Lawrence Brantley and Beatrice Brantley.[1] Plaintiffs' attorney, David Fox, has also requested that he be treated as an intervening party plaintiff for purposes of the attorneys' fees claims.[2] The underlying claim

---

[1] On November 14, 1983, plaintiffs accepted an offer of judgment in the amount of one dollar plus costs against defendants John J. Mahoney and Carl E. Zentz. In their Bill of Costs against these defendants, plaintiffs sought $21,207.45, including attorneys' fees. By order issued February 6, 1984, plaintiffs were permitted to recover $71.65 in costs. Their appeal of this order was dismissed for lack of certification under Rule 54(b), Fed.R.Civ.P. *Freeman v. B & B Associates,* No. 84–5148 (D.C.Cir. July 10, 1984).

The defendants here assert that the Court's treatment of plaintiffs' Bill of Costs amounts to a holding "that Zentz and Mahoney's offer of judgment did not include attorneys' fees and, as such, attorney's fees were *not* awarded." Opposition of Defendants B & B Associates and W. Lawrence Brantley to Plaintiffs' Application for Award of Attorney's Fees at 4 (emphasis in original). Contrary to the defendants' embellishment, however, the Court's order does not state that attorneys' fees were excluded from plaintiffs' costs because not included in the offer of judgment. Mahoney and Zentz raised numerous arguments going to plaintiffs' status as prevailing parties, and the Court's disposition of the Bill does not foreclose the issues raised by this application.

The record also reflects that the Clerk entered a default against defendant J. Edwards on December 22, 1983. The plaintiffs have not, however, applied for a judgment by default pursuant to Rule 55(b)(2), Fed.R.Civ.P. Accordingly, an accompanying order will require plaintiffs to advise the Court as to the status of their suit against defendant Edwards.

[2] In their complaint, the plaintiffs seek attorneys' fees for alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.,* and the District of Columbia's Consumer Protection Procedures, D.C.Code Ann. §§ 28–3901 *et seq.* The plaintiffs also seek attorneys' fees for conduct alleged to constitute "fraud in the transaction."

has been resolved by plaintiffs' acceptance of defendants' offer of judgment made pursuant to Rule 68, Fed.R.Civ.P. The accepted offer of judgment contemplates rescission of the note and deed of trust which imposed obligations on plaintiffs and return to defendants of the balance of the principal advanced to plaintiffs. The offer expressly provided, however, that it "includes an offer to pay costs but specifically excludes all liability for attorneys' fees."[3]

Plaintiffs and Mr. Fox had agreed to a fee arrangement whereby

counsel fees would be paid by the defendants if plaintiffs prevailed, or if fees were not obtained from defendants, plaintiffs' recovery would be reduced by a one-third legal fee (contingent on prevailing in the litigation).

Memorandum of Points and Authorities in Support of Plaintiffs' Application for Award of Attorneys' Fees from Defendants B & B Associates, W. Lawrence Brantley and Beatrice Brantley, Exhibit A at 2–3.[4]

Plaintiffs demonstrate by affidavit, without contradiction, that at the earliest stages of the litigation Mr. Fox called defendants' counsel's attention to what appeared to be a controlling case on liability[5] and proposed settlement by rescission, plus the attorneys' fees that had been incurred up to that point. Plaintiffs' counsel repeated the proposal on several other occasions. Defendants nevertheless engaged in costly litigation for many months before coming forth with virtually the same offer that plaintiffs had made, except for the attorneys' fees.

The pleadings of the parties raise three issues:

(1) Are plaintiffs the prevailing parties?

(2) Is a fee award barred by the terms of defendants' offer of judgment, which plaintiffs accepted?

(3) If defendants are liable for fees, what should be the amount?

## I.

The Truth-in-Lending Act provides that:

[A]ny creditor who fails to comply with any requirement imposed under this part ... is liable to such person in an amount equal to the sum of—

. . . . .

(3) in the case of any successful action to enforce the foregoing liability, ... the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1640(a)(3).

On July 12, 1983, plaintiffs, by counsel, had filed a complaint alleging, among other things, defendants' failure to comply with the Truth-in-Lending Act, and praying for an injunction against foreclosure of a mortgage on their residence. Plaintiffs' counsel succeeded in obtaining, first a temporary restraining order, and then an injunction which prevented foreclosure. Thereafter, defendants moved to dismiss, and for summary judgment. Their strenuous defense required plaintiffs' counsel to seek and obtain judicial intervention to obtain discovery.[6] After all these litigation maneuvers, defendants made the offer of judgment which plaintiffs accepted. Plaintiffs thereby succeeded in exonerating themselves from a burdensome obligation which, but for this litigation, would have cost them their home.

Defendants contend that even if plaintiffs may be said to have prevailed, the offer of judgment did not provide for any money damages, did not declare any violation of the Truth-in-Lending Statute, and was not a successful invocation of that statute. According to defendants, plaintiffs prevailed only on local law theories which do not provide for attorneys' fees.

---

**3.** Plaintiffs' acceptance of the offer was signed by both plaintiffs and their attorney.

**4.** The fee agreement itself is not in evidence. It is described in an affidavit annexed to the Memorandum Filed in Support of the Fee Petition.

**5.** *Greene v. Gilbraltar Mortgage Investment Corp.,* 529 F.Supp. 186 (D.D.C.1981).

**6.** Defendants also sought extensive discovery from plaintiffs, which plaintiffs resisted.

It is now well-established that a party is successful for purposes of assessing fees if he has obtained a successful result whether by judgment, settlement, or, in this case, acceptance of an offer of judgment. *See Copeland v. Marshall,* 641 F.2d 880, 904–05 (D.C.Cir.1980); *James v. Home Construction Co.,* 689 F.2d 1357, 1358 (11th Cir.1982); *see also Knighton v. Watkins,* 616 F.2d 795, 798–99 (5th Cir.1980). Moreover, recent cases reject defenses based on technical distinctions between the contentions in a complaint which prevailed and those which did not. As the Supreme Court has recently stated:

> Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) (footnote omitted).

It is clear in the circumstances here that the language of the offer of judgment cannot paper over the fact that plaintiffs succeeded and that they succeeded in large measure because of their counsel's ingenuity in invoking the Truth-in-Lending Act to oppose a home foreclosure and to achieve rescission of the underlying note and mortgage. The injunction against foreclosure and the offer of judgment here were the result of the possibility that if defendants went to trial, they would be held to be in violation of the Truth-in-Lending statute and suffer all of the heavy penalties there authorized. There is a clear causal connection between plaintiffs' Truth-in-Lending claim and the successful result which was achieved. This is plainly "a successful action" by plaintiffs "to enforce" defendants' liability under the Truth-in-Lending Act.

## II.

Whether plaintiffs' acceptance of the offer of judgment eliminated defendants' liability for a fee for plaintiffs' attorney is a more difficult question. Defendants contend with considerable merit that the offer of judgment, by its terms, "specifically excludes all liability for attorneys fees." Offer of Judgment (June 18, 1984); Opposition of Defendants B & B Associates and W. Lawrence Brantley to Plaintiffs' Application for Award of Attorney's Fees at 2–3 (hereinafter Defendants' Opposition). They concede that "whether or not to make [a fee award in this case] is committed to the discretion of this Court in the exercise of its equitable powers." Defendants' Opposition at 4. They contend, however, that "as the offer of judgment specifically excludes attorneys fees, the equities in this case clearly lie with the defendants." *Id.*

Plaintiffs counter that their attorney has an independent claim against defendants for a fee, and that the plaintiffs had no power to compromise it. Plaintiffs and Mr. Fox rely upon recent Eleventh Circuit authority that in Truth-in-Lending as well as civil rights cases there are circumstances where the attorney may maintain his fee claim independently of the underlying claim of the client. *James v. Home Construction Co., supra.* In *James,* the attorney originally represented the plaintiff on a statutory fee basis. A successor attorney settled the case for rescission plus cash, and waived its fee claim. But the settlement made no provision for the first attorney's fee. The first attorney intervened and persuaded the Court of Appeals that she had standing to seek fees after settlement of the case in chief. The Court held that "it is the attorney who is entitled to fees in a [Truth-in-Lending Act] case, not the client." *Id.* at 1358. This principle is persuasive and will be followed here.

Judge Johnson's opinion in *James* recognized that, as a "practical matter," the award of attorney's fees is a "critical and integral part" of Congress' plan to create a system of private attorneys general who could "effectively enforce the Act without government intervention." *Id.* at 1359. Moreover, Judge Johnson observed that:

> If settlement of a [Truth-in-Lending Act] case precluded the plaintiff's attorney from seeking a fee award, nothing would prevent indigent clients, who have no financial interest in statutory fee

awards, from freely bargaining them away without personal detriment. Such a result would enable creditors who have violated the Act to escape liability for attorney's fees; such a practice would thwart both the statute's private enforcement scheme and its remedial objectives .... Congress could not have intended such a result. *Id.* (citation omitted.) These considerations helped to establish the attorney's standing in *James* and in this case and tend to support the plaintiffs' ultimate position here. But they do not resolve the particular issue created by the language of the offer of judgment. That is a matter, as defendants' concede, within the Court's discretion to be resolved by balancing equitable considerations. *See* Defendants' Opposition at 4.

It is apparent that defendants' offer of judgment confronted the plaintiffs and their counsel with a difficult problem. It was obviously in plaintiffs' personal financial interest to accept the offer and be relieved of their heavy obligation, even though there was some risk that they could be out of pocket for an undetermined attorney's fee.

The offer of judgment presented a cruel dilemma to the attorney. If he urged his clients to bargain for a fee, they would risk losing the chance to relieve themselves of their heavy obligation to defendants and from the continuing aggravation and risk of litigating against determined adversaries. Mr. Fox's first obligation was to his clients. He could advocate his own fee claim only at their peril. Indeed, if he had even suggested that the fee issue be resolved separately from, and subsequent to, settlement of the merits, he could have put relief for his clients seriously in jeopardy.

A solution to such dilemmas may be an order or a rule requiring parties to settle the merits of a Truth-in-Lending claim separately from the award of statutorily authorized attorneys' fees. This would eliminate a defendant's opportunity to squeeze an attorney and his client into a situation where an attorney can only be assured of an opportunity for a fee by jeopardizing a settlement otherwise advantageous to his client. *See Prandini v. National Tea Co.,* 557 F.2d 1015, 1021 (3d Cir.1977). There is, however, no such rule in this Court or in this Circuit. *See Final Subcommittee Report of the Committee [of the District of Columbia Circuit] on Attorneys Fees,*[7] Bar Report,[8] August/September 1984, at 4, 5–6. No such order was sought or issued in this case, and it did not occur to the Court to enter such an order *sua sponte.* Accordingly, it is necessary to resolve after the fact whether the plaintiffs' acceptance of an offer in which they waived their right to collect an attorneys' fee from defendants effectively barred Mr. Fox's independent claim against defendants for that fee.

◼ The astute defendants drafted the offer of judgment. They are chargeable with knowledge of the Eleventh Circuit's precedent to the effect that the plaintiffs' attorney had an independent claim and of the Third Circuit's concern about the conflict which such offers automatically create. The offer of judgment must be construed strictly against them. They failed to make clear that the offer barred the attorney's independent claim. Accordingly, that claim survives and must be considered.

A question remains, however, as to whether the attorney here is nevertheless precluded from recovery against defendants because of his fee agreement with his clients. If Mr. Fox could not collect a fee from defendants, he would theoretically be able to turn to his clients for payment. Thus, if Mr. Fox collected his fees from the defendants, his recovery would relieve the plaintiffs of that theoretical fee obligation. But the fee agreement is cast in terms of a cash recovery. There is no language in it

---

**7.** The relevant portion of the *Final Subcommittee Report* is annexed to this opinion as Exhibit A.

**8.** In 1982 the Chief Judge of the Court of Appeals for the District of Columbia appointed a committee of judges and lawyers to study and report on some concerns of the Bar about the courts' "administration of attorney fee claims." A subcommittee consisting of the lawyer members of the committee has referred it to the two courts for consideration and such action as they deem to be indicated.

contemplating the result achieved here: avoidance of foreclosure and rescission. This is therefore not a case where an attorney has a clear alternative claim against his client, making the attorney's recovery against defendants a windfall for that client.

■ Thus, the plaintiff's acceptance of the offer of judgment cannot impair Mr. Fox's independent standing to seek fees from the defendants. If Mr. Fox is not allowed to recover from the defendants, other lawyers, considering such a precedent, would be reluctant to represent Truth-in-Lending clients—especially when their clients have little incentive to refuse an offer of judgment that purports to destroy an attorney's recourse against a defendant. The effect on the availability of counsel willing to represent plaintiffs under such circumstances could effectively undermine the private attorney general concept upon which the Truth-in-Lending statute is based. *See James, supra,* at 1359. In the circumstances here, allowance of the attorney's claim against defendants does not produce a windfall for the plaintiffs.[9]

### III.

■ The claim for attorney's fees is supported by detailed statements of 62 tasks of legal work performed by Mr. Fox together with the hours consumed in each task. The items range from 16.5 hours for preparation of pretrial brief to .3 hours for Analysis of Trustees Opposition to Plaintiffs' Motion for Preliminary Injunction. A review of the 251.1 hours charged by Mr. Fox shows them to be appropriate for the tasks performed. The relatively modest number of hours charged by associates indicates that Mr. Fox was doing the bulk of the work himself; the failure of the associates to itemize their time by tasks does not preclude their charging for it.

The hourly rates used by plaintiffs' attorney to calculate his fee is commensurate with fees approved by this Court as the "market value" of the services of attorneys of comparable skill and experience, adjusted for inflation. Indeed, defendants do not seriously challenge these elements of plaintiffs' fee claim.

■ In addition, plaintiffs seek an incentive bonus. There are good arguments in support of such an award where an attorney's claim for a fee is entirely dependent on achieving results. Plaintiffs' counsel achieved a good result here. He also achieved it in the face of very formidable and determined opposition. Moreover, plaintiffs are not regular clients or persons likely to bring this attorney additional lu-

9. This ruling does not constitute approval of plaintiffs' argument that the offer of judgment was fatally defective to the extent that it purported to exclude attorney's fees. Plaintiffs observe that Rule 68 permits a party to "offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, *with costs then accrued.*" Fed.R.Civ.P. 68 (emphasis added.) Under the Rule's language, costs are not subject to settlement. Plaintiffs argue that attorney's fees should be treated as costs for purposes of Rule 68, and that any attempt to exclude such costs from a Rule 68 offer of judgment is impermissible. In support of this proposition, plaintiffs rely primarily on *Scheriff v. Beck,* 452 F.Supp. 1254 (D.Colo.1978), where the court held that "Rule 68 requires that an offer of judgment include payment of costs then accrued. In *civil rights* actions attorney's fees can constitute part of the costs. Rule 68 does not permit an offeror to choose which accrued costs he is willing to pay." *Id.* at 1260 (emphasis added). As a result, the court concluded that an offer which excluded attorney's fees was "fatally defective." *Id.* The effect of this holding is limited to the civil rights statutes, which expressly state that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee *as part of the costs.*" 42 U.S.C. § 1988; *see also* 42 U.S.C. § 2000e–5(k); *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 363, 101 S.Ct. 1146, 1155, 67 L.Ed.2d 287 (1981) (Powell, J., concurring in the result) ("In Title VII cases, the scope of 'costs' is defined in the statute itself."). In contrast, the Truth-in-Lending statute draws a distinction, permitting recovery of "the costs of the action, *together with* a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1640(a)(3) (emphasis added). Similarly, the District of Columbia's Consumer Protection Procedures do not indicate that attorneys' fees are to be treated as costs. D.C.Code Ann. § 28–3905(k)(1). For purposes of plaintiffs' claims, therefore, costs do not include attorney's fees. As a result, the defendants' offer of judgment is not defective *ab initio* under Rule 68.

crative business. Here, if Mr. Fox had been unable to recover fees from defendants, he theoretically might have obtained some compensation under his fee agreement with plaintiffs. But if the plaintiffs had not succeeded at all, Mr. Fox would have received nothing. Accordingly, a claim for some incentive award is justified.

 Defendants' challenge to the amount of the fee emphasizes the discrepancy between the amount recovered, i.e., the value of the rescission, and the amount of the fee. They do not mention the rescue from foreclosure achieved by plaintiffs' attorney or the long term cost of refinancing the "balloon" portion of the rescinded loan. It is obviously difficult to quantify the value of the salvation of the home from foreclosure or the value of the rescission. But this difficulty does not justify defendants' objections. The statutory fee is not measurable so much by the amount of the recovery as by the value of the services. Nevertheless, in computing a market rate for the fee, it is appropriate to consider how the market place would react to a fee grossly in excess of the values at stake, particularly where, as here, the issue on the merits was ultimately resolved by settlement rather than by a jury verdict or a court decision. The fee ultimately to be awarded is a "reasonable" fee, and the decision as to what is reasonable is within the discretion of the Court.

 Accordingly, all these things considered, the Court finds and concludes that it is reasonable for defendants to pay plaintiffs' attorney an amount equal to his time charged at the rate of $100 per hour and his associates' time charged at the rate of $75 per hour. It is appropriate in these circumstance to offset any incentive award by an adjustment to reflect the difficulty of fixing the money value of the result to plaintiffs. Accordingly, an accompanying order will award Mr. Fox a fee of $31,860.

Finally, defendants' question a number of small items in the Bill of Costs. Plaintiffs have included in their Bill of Costs expenses incurred for transcripts (invoking 28 U.S.C. § 1920(2)), photocopying (invoking 28 U.S.C. § 1920(4)), fees for the clerk, and fees for the service of process. The clerk has not yet taxed costs. It will be time enough to address these challenges when and if the clerk allows the entire Bill of Costs. Meanwhile, pursuant to the concern for expeditious award of attorney's fees expressed in *Parker v. Lewis,* 670 F.2d 249 (D.C.Cir.1981), the accompanying order will treat the attorney as an intervenor in the plaintiffs' claim for attorney's fees and enter judgment for the attorney against the defendants B & B Associates, W. Lawrence Brantley and Beatrice Brantley.

### ORDER

Upon consideration of the offer of judgment served by defendants B & B Associates, W. Lawrence Brantley and Beatrice Brantley upon plaintiffs, the petition of plaintiffs for attorney's fees, the Bill of Costs, and the pleadings of the parties in respect to the foregoing, it is this 20th day of September, 1984, hereby

ORDERED, ADJUDGED and DECREED: that the transaction which is the subject of the Complaint herein, be, and the same hereby is, declared rescinded, and the parties shall give effect to such rescission as follows, the following to be effected simultaneously by appropriate extra-judicial means:

a. Defendants B & B Associates, W. Lawrence Brantley, and Beatrice Brantley shall, on or before October 15, 1984, cancel the Note which is the subject of the Complaint and shall cause to be released of record the Deed of Trust which secures the said Note; and

b. Plaintiffs shall, on or before October 15, 1984, pay to the said defendants the sum of $360.57, being the sum of $8,465.57 received by them less the sum of $8,105.00 subsequently paid by them to the said defendants; and it is further

ORDERED, ADJUDGED and DECREED: that David E. Fox shall be treated as a plaintiff intervenor for purposes of his fee application, and shall have judgment against defendants B & B Associates, W. Lawrence Brantley and Beatrice Brant-

ly, jointly and severally in the amount of $31,860; and it is further

ORDERED: that, on or before September 28, 1984, the plaintiffs shall file a report advising the Court of the status of their suit against defendant J. Edwards.

## EXHIBIT A

Final Subcommittee Report of the Committee on Attorneys Fees

\* \* \* \* \* \*

### 3. *Simultaneous Settlement of the Merits and Attorneys Fees*

From the outset, this issue has provoked the greatest controversy of any aspect of the subcommittee's work. In its interim report, the subcommittee presented two sharply divergent views on the need for a rule regarding settling fee issues at the same time as settling the merits of a controversy in cases in which attorneys fees are available to the prevailing party because of fee shifting statutes or other similar rules of law. The issue has been the subject of litigation in various courts, an opinion by the Association of the Bar of the City of New York, present consideration by the Ethics Committees of the D.C. Bar and of the American Bar Association, and a student note in 131 U.Pa.L.Rev. 793 (1983).

One of the questions that the subcommittee posed was whether the issue ought to be left to litigation or was more appropriate for a rule. The subcommittee ultimately concluded that a rule was not advisable, largely because it was concerned that any lines that it might wish to draw would necessarily be imprecise and that no lawyer should be subject to discipline unless the rules were clear.

On the other hand, leaving the matter to litigation was unsatisfactory for a number of reasons, not the least of which is that it would provide no guidance to those attorneys who wished to conform their conduct to accepted norms, but were uncertain as to what those norms are. Accordingly, the subcommittee concluded that it would be useful to attempt to draft general guidelines that would be available for members of the legal community. While such guidelines would not preclude litigation, at least they would allow members of the Bar to know what is generally considered acceptable by the subcommittee, and perhaps by the full committee and the District Court as well. During the comment period on its draft report, the subcommittee became aware of a case now pending in the D.C. Circuit, *Moore v. National Ass'n of Securities Dealers, Inc.*, No. 83–2213, in which one aspect of this problem is presented. For reasons set forth below the subcommittee decided not to await the decision in *Moore*, which has not been set for argument.

The issue of whether settlement discussions in fee shifting cases may properly include the settlement of fee issues, as well as the merits, presents two distinct problems. The first is whether simultaneous settlement involves such an inherent conflict between the plaintiffs and their attorneys that it ought to be uniformly prohibited. The second question is whether a defendant (or more precisely an attorney for a defendant) acts improperly by insisting on discussing settlement of both the merits and fees at the same time, thereby potentially creating a conflict between the plaintiffs and their attorneys. Because the issue are distinct, and the problems created rather different, the subcommittee decided to deal with them separately.

### (a) *Plaintiff-Plaintiff's Attorney Conflict*

The problem posed in this situation arises because there is a potential that the plaintiff's attorney will trade off benefits for the client, especially a class client, for his or her own fees, by settling the case in a manner advantageous to the attorney and less favorable to the client. The subcommittee recognized that there is a potentially serious problem but has concluded that a blanket prohibition against the simultaneous negotiation of the merits and of fees, adopted in *Prandini v. National Tea Co.*, 557 F.2d 1015 (3rd Cir.1977), is not the best way to eliminate the difficulty.

If the client is an individual, the subcommittee concluded that disclosure of the fee

to be paid the attorney, and approval by the client of his/her part of the settlement, is all the protection that is required for the client. In such situations the client's informed decision to accept or reject settlement (on which he/she is always free to obtain a second opinion) is sufficiently straightforward, and indeed similar to other settlement decisions clients routinely make, as to obviate any need for special rules to protect the client from his/her own lawyer. The subcommittee further recognized the possibility that carefully drawn retainer agreements may help resolve such controversies before they arise, although they alone may not dispose of the problems discussed in section (b) below. In general, the subcommittee believes that such agreements are useful, provided that they are written in a way that does not give the attorney an unfair advantage such as, for instance, by permitting him or her to withhold information about the amount of fees he/she will receive from the· defendant when the client is deciding whether to accept the settlement on the merits.

In a class action, the problems are somewhat more complex. Nonetheless, the subcommittee concluded that the *Prandini* prohibition was not necessary if certain protections were provided. These include notice to the class that a simultaneous settlement has occurred and full disclosure to the judge of the terms of both aspects of the settlement. If these are combined with the consideration by the judge of the attorneys fee issue at the same hearing as the merits, this should be ample protection for the class members, provided that the court focuses on the question of what is the net benefit to the class from the combination settlement agreed upon. This approach would suffice both when the settlement is for a lump sum (with a statement as to the maximum amount to be requested by the attorneys), and where the settlement provides for a fixed amount to the client and another amount to the attorneys, in which case both amounts should be treated as a package and the fairness of the settlement appraised in light of the total offer made by the defendant.

There are several reasons that the subcommittee rejected the *Prandini* approach, which prohibits simultaneous settlement of the merits and fees as a means of protecting class members. One is the difficulty of enforcing any such prohibition, given the lack of information available to the court as to what actually takes place during settlement discussions and the ability of the parties to communicate fee information short of "negotiating" on the subject. The subcommittee also recognized that the *Prandini* approach made it more difficult for defendants to settle cases because they cannot fix their total exposure, unless information about attorneys fees is supplied through the back door. Furthermore, the subcommittee also believes that the process may actually be unfair to class members since the separate settlement of attorneys fees will leave them with no interest in seeing that fees are reasonable, but not excessive, and may in fact deprive them of additional benefits if a court should decide that the amount that the defendant is willing to pay for attorneys fees is more than the plaintiffs' attorneys are entitled to, and allows the extra portion to revert to the defendant.

One final point on this aspect of this guideline should be emphasized. Nothing should be construed as requiring a plaintiff to engage in simultaneous settlement of the merits and fees: that is a question best left to individual attorneys and their clients. The guideline simply permits such conduct on the part of a plaintiff's attorney. Moreover, even if simultaneous settlement of the two aspects does not occur, the court should remain vigilant in reviewing attorneys fees, even where the defendant does not object, since the class members will probably not participate because they have no economic stake in whether their attorneys receive the fees in full, or part reverts to the defendant.

(b) *Rights of Defendants to Make Simultaneous Offers of Settlement*

The subcommittee also considered whether it was unethical for a defendant to make

a simultaneous offer of settlement of fees and the merits, where the effect is to drive a wedge between the plaintiff and counsel because the settlement may be very advantageous for the client and unfavorable for the attorney. In considering this issue, the subcommittee reviewed the detailed comments submitted by the Washington Council of Lawyers on this subject, but decided that its prior conclusion—that the answer depends entirely on the circumstances— was the correct view. In reaching its conclusion it recognized that the purpose of such settlement offers is not, in most cases, to create an attorney-client conflict, nor to punish or deter plaintiffs' attorneys from taking on fee shifting cases. Generally speaking, the reason that defendants make such offers is to limit their total exposure, which could not occur if a two-stage settlement process were mandatory.

Against this background, it was agreed that there were certain situations in which the refusal of defense counsel to proceed except on a package basis was improper. For instance, in a Freedom of Information Act case, where a journalist was the plaintiff and either had a reasonably good case, or had won in the district court and the government was considering appeal, it would be improper for government counsel to offer to release the documents, only if plaintiff's counsel agreed to waive all attorneys fees. That situation presents a grossly unfair choice to the plaintiff and his/her counsel, and permitting such offers to be made would seriously undermine the purpose of fee shifting provisions. Moreover, it would serve no end other than saving the government money which it would otherwise have to pay, yet any such saving is plainly at odds with the purpose for which the fee shifting statute was enacted.

There are cases at the other end of the spectrum, however, where it is proper for a defendant to make a lump sum settlement offer. For instance, in a Title VII case, in which the only issue is money, and the defendant believes that the plaintiff's case is very weak, it would be proper for counsel to make an offer of a lump sum settlement in a quite modest amount. That would be true even if they were a large

theoretical exposure on damages and plaintiff's counsel had put in a significant number of hours. In the subcommittee's view, no purpose would be served by saying that no such offer could be made, since plaintiff and his/her counsel are always free to reject it.

The key in these situations is whether the defendant's offer is reasonable in light of all of the circumstances, including the chances of success on the merits and the risk of possible exposure in damages and attorneys fees. And in making such determinations, the legitimate interest of the fee shifting provisions must be balanced against the legitimate interest of the defendant, whether a governmental agency or private party, in making an offer which will fix liability with considerable certainty. This balancing approach applies regardless of whether the issue is phrased in terms of the right of the defendant to make a lump sum settlement offer, or the right to refuse to pay fees to the plaintiff's attorney while providing some measure of relief to the client. In both situations, the inquiry is the same and can be decided only on a case by case basis, assessing the reasonableness of the defendant's conduct.

Because of its conclusion that the matter cannot be decided on an across-the-board basis, the subcommittee concluded that it would be unwise to attempt to write a rule. It is for these reasons that the subcommittee rejected the views expressed in *Prandini* and other cases such as *Lisa F. v. Snider,* 561 F.Supp. 724 (N.D.Ind.1983), and instead adopted the views expressed in *White v. New Hampshire Dept. of Employ Sec.,* 455 U.S. 446, 453 n. 15 (1982), that the simultaneous settlement of fee disputes does not necessarily create an impermissible conflict of interest.

Because the Washington Council of Lawyers submitted such extensive comments on this aspect of the draft report, the subcommittee decided to explain why the Council's suggestions were not adopted. The Council's principal proposal was that we recommend a rule that would entitle the court to approve the merits part of a settle-

ment and, despite the defendant's refusal to agree to pay attorneys fees, to award fees nonetheless. As an alternative, the Council suggested deferring any recommendation until *Moore* is decided.

Apart from the merits of the Council's proposal, it could not be adopted because it proposes a substantive rule of law (as indeed the heading on page 8 of its comments explicitly states). However, the subcommittee has no authority to make that kind of recommendation, nor would the District Court have the power to pass such a rule under its local rule-making authority. Thus, if such a standard is to be established, it will have to come from a litigated case, such as *Moore*, or from Congress. The subcommittee also does not believe that the pendency of *Moore* is a proper basis to defer issuing its guidelines, principally because it believes that interim guidance will be useful to lawyers before *Moore* is decided and that guidance can always be amended if the decision in *Moore* requires it.