Latanya **COLLIER, individually and as parent and natural guardian of Jarrett Dykes, an infant, on behalf of themselves and others similarly situated,** Plaintiff,

v.

**MONTGOMERY COUNTY HOUSING AUTHORITY, Defendant.**

No. CIV. A. 97–5286.

United States District Court, E.D. Pennsylvania, Philadelphia Division.

April 20, 2000.

Michael Monheit, Herbert Monheit, P.C., Peter R. Kohn, Monheit, Monheit, Silverman & Fodera, P.C., Philadelphia, PA, for Plaintiffs.

Mary Kay Brown, Jeffrey B. First, Buchanan Ingersoll Professional Corporation, Alan C. Kessler, Wolf, Block, Schorr and Solis–Cohen LLP, Philadelphia, PA, for Defendants.

### MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an action brought by named plaintiff Latanya Collier, individually as a parent and guardian of Jarrett Dykes, an infant, on behalf of themselves and others similarly situated ("plaintiff"), alleging that defendant Montgomery County Housing Authority ("MCHA") failed to follow statutory and regulatory requirements relating to lead-based paint in public housing pursuant to the United States Housing Act of 1937 (the "Housing Act"), 42 U.S.C. § 1437 *et seq.*, and the ·Lead–Based Paint Poisoning Prevention Act (the "Lead Act")[1], 42 U.S.C. § 4801 *et seq.* The parties have reached an amicable settlement of this case and now seek the court's preliminary approval of the proposed class action and settlement and approval of the proposed notice to ·the putative class members. Having conducted two hearings on this matter and upon review of the parties' submissions and the relevant authorities, the court grants conditional approval to the proposed ·class, class representative, and class settlement.

### I. BACKGROUND

Plaintiff claims that MCHA has failed to implement and comply with various federal laws regarding lead-based paint. Specifically, plaintiff alleges that MCHA is required, pursuant to federal law, to periodically inspect properties qualifying for MCHA's Section 8 Existing Housing Assistance Payments Program ("Section 8") to determine that those properties meet certain standards for decent, safe, and sanitary housing as established by the United States Department of Housing and Urban Development ("HUD"). Plaintiff also claims, *inter alia,* that MCHA is obligated to verify that a Section 8 rental property that fails to meet HUD's standards is promptly repaired before a tenant moves into the unit or before the landlord is provided with any federal financial housing assistance.

Notwithstanding these federal laws and regulations, plaintiff contends that MCHA failed to ensure that the Section 8 rental property in which she and her minor child reside, and the properties of others similarly situated,[2] met HUD's standards. In sum, plaintiff maintains that MCHA failed to inspect for lead paint in Section 8 rental properties, failed to enforce lead paint abatement in Section 8 rental properties, failed to notify

---

1. The Lead Act provides in pertinent part:
 The Secretary of Housing and Urban Development ... shall establish procedures to eliminate as far as practicable the hazards of lead based paint poisoning with respect to any existing housing which may present such hazards and which is covered by an application for mortgage insurance or housing assistance payments under a program administered by the Secretary or otherwise receives more than $5,000 in project-based assistance under a Federal Housing program.
 *See* 42 U.S.C. § 4822(a)(1).

2. For purposes of settlement, the proposed putative class is identified as:
 a. All tenants or prospective tenants, of any residential housing structure constructed prior to 1978 (which is not a zero bedroom unit, a unit certified by the qualified inspector to be free of lead-based paint, or a unit designated exclusively for the elderly) located within the geographical limits of the County of Montgomery, Pennsylvania for which a Request for Lease Approval has been approved by MCHA's Section 8 Existing Housing Program; and

Section 8 families having minor children that the properties may contain lead-based paint, and failed to educate these families as to the symptoms of lead poisoning and the precautions that are available. Plaintiff sought declaratory and injunctive relief.

After being advised that the parties had reached a settlement, this court held two hearings on the parties' motion for preliminary approval of the proposed settlement agreement. *See* Tr. 10/4/99 and Tr. 1/3/00. The parties have now submitted a revised proposed settlement agreement and proposed notice of settlement in accordance with the court's instructions at those hearings.[3] For the reasons explained below, the court, at this time, will conditionally certify plaintiff's proposed class pursuant to Rule 23(b)(2).

## II. DISCUSSION

■ Under Federal Rule of Civil Procedure 23(c)(1), the court can make a conditional determination of whether an action should

> b. who are, or have residing with them, one or more children under the age of 6.

3. The court ordered that the revised proposed Settlement Agreement and proposed Notice to Class Members be filed of record.

4. Whether the cause of action stated by the complaint is viable is of no concern in determining whether the class should be conditionally approved. "The determination whether there is a proper class does not depend on the existence of a cause of action. A suit may be a proper class action, conforming to Rule 23, and still be dismissed for failure to state a cause of action." *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970).

5. Federal Rule of Civil Procedure 23(a) provides as follows:
> One or more members of a class may sue or be sued as representative parties on behalf of all only if
> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

6. Federal Rule of Civil Procedure 23(b) provides, in pertinent part, as follows:

be maintained as a class action, subject to final approval at a later date.[4] *See, e.g., Lusardi v. Xerox Corp.*, 747 F.2d 174, 177 (3d Cir.1984). To be maintained as a class action, a plaintiff must establish the four prerequisites of numerosity, commonality, typicality, and adequacy of representation.[5] *See* Fed.R.Civ.P. 23(a); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir.1994) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 246 (3d Cir.1975)). Furthermore, the claim must be maintainable under one or more of the three subsections of Rule 23(b). *See Baby Neal*, 43 F.3d at 55–56. For purposes of settlement only, the parties contend that section 23(b)(2)[6] is applicable to this lawsuit because MCHA has allegedly acted on grounds generally applicable to the entire class.[7]

### A. *Requirements of Rule 23(a)*

#### 1. *Numerosity*

■ As proposed by the parties in the settlement agreement, the class is composed

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
> . . . .
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

7. Although MCHA, having already reached agreement with plaintiff as to the terms of settlement, does not oppose the proposed class action in order to secure this settlement, to avoid the uncertainties and risks in litigation, and to avoid the substantial investment of both time and money necessary to continue this litigation and to continue to oppose certification of a plaintiff class, it is incumbent upon the court to conduct an independent evaluation of the proposed class action and to arrive at an independent determination of both the validity and desirability of the use of this procedural device. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2248–49, 138 L.Ed.2d 689 (1997) (finding specifications of Rule 23—"those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context"); *Pozzi v. Smith*, 952 F.Supp. 218, 221 (E.D.Pa. 1997) (noting that court must make a finding that certification is proper for settlements "because the legitimacy of settlement classes depends upon fidelity to the fundamentals of Rule 23").

of all persons who are tenants of Section 8 properties and who have a minor under the age of 6 residing with them or who are such a minor. *See* Settlement Agreement ¶ I.A.2. As estimated by counsel for plaintiff at the hearing on January 3, 2000, the total class consists of approximately 1800 families. *See* 1/3/00 Tr. at 11, 30.

■■■ "[T]he exact size of [a] class need not be known so long as it can be shown that it is sufficiently large to meet the numerosity requirements." *See Hurt v. Philadelphia Housing Auth.*, 151 F.R.D. 555, 559 (E.D.Pa. 1993); *see also Moskowitz v. Lopp*, 128 F.R.D. 624, 628 (E.D.Pa.1989); *In re Three Mile Island Litig.*, 95 F.R.D. 164, 165 (M.D.Pa.1982). In the instant case, the court concludes that although the exact number of members is not yet known, it is likely that the number of members would make joinder impracticable.[8] *Cf. Manning v. Princeton Consumer Discount Co.*, 533 F.2d 102, 104 (3d Cir.1976) (affirming determination that numerosity was not shown where plaintiff failed to show conduct complained of was industry-wide).

### 2. Commonality

■■■ "Rule 23(a)(2) does not require that all issues in the litigation be common, only that common questions exist. Indeed, a single common question is sufficient ...." *In re Asbestos School Litig.*, 104 F.R.D. 422, 429 (E.D.Pa.1984) (citations omitted), *amended by*, 107 F.R.D. 215 (E.D.Pa.1985), *aff'd in part and vacated in part*, 789 F.2d 996 (3rd Cir.1986); *see also Baby Neal*, 43 F.3d at 56 ("The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.... [C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members

are subject to the same harm will suffice."); *Weiss v. York Hosp.*, 745 F.2d 786, 809 (3d Cir.1984) (finding that "not all questions of law or fact raised need be in common"). Thus, "[b]ecause the requirement may be satisfied by a single common issue, it is easily met ...." *Baby Neal*, 43 F.3d at 56 (citing Herbert B. Newberg & Alba Conte, 1 NEWBERG ON CLASS ACTIONS, § 3.19, at 3–50 (3d ed.1992)).

■■■ As described by plaintiff, the following common issues exist: MCHA allegedly failed to ensure that the condition of the Section 8 rental property in which she and her minor child reside, and the properties of others similarly situated, met federal standards. Specifically, plaintiff maintains that MCHA failed to inspect for lead paint in the Section 8 rental properties, failed to enforce lead paint abatement in the Section 8 rental properties, failed to notify Section 8 families having minor children that the properties may contain lead-based paint, and failed to educate these families as to the symptoms of lead poisoning and the precautions that are available to them. The resolution of all of the class members' claims is hinged upon a determination of whether MCHA is in compliance with the Housing Act, the Lead Act, and the applicable regulations. Based on these representations, plaintiff has successfully established commonality. *See, e.g., Hurt*, 151 F.R.D. at 559 (finding commonality existed in class action against Philadelphia Housing Authority alleging its non-compliance with federal law and regulations regarding lead-based paint in public housing).

### 3. Typicality

■■■ The third prerequisite, typicality, "is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiff[ ][has] incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." [9] *Baby*

---

**8.** The burden of establishing the elements of Rule 23 is generally on the plaintiff. *See Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir.1974); *Freedman v. Arista Records, Inc.*, 137 F.R.D. 225, 227 (E.D.Pa.1991); *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 321 (E.D.Pa.1987). *But see Welch v. Board of Directors of Wildwood Golf Club*, 146 F.R.D. 131, 136 (W.D.Pa.1993) ("The

burden is on the defendants to prove that the representation will be inadequate.")

**9.** The exact meaning of this requirement defies ready explanation. *See generally Weiss*, 745 F.2d at 809–10 & n. 36 (noting "elusive" nature of the typicality requirement).

*Neal*, 43 F.3d at 57. "Questions of law and fact need not be identical, but merely need to arise out of the same legal or remedial theory." *Hurt*, 151 F.R.D. at 560. This requirement generally "is met if the plaintiff's claims arise from the same event or course of conduct that gives rise to the claims of the other class members and is based on the same legal theory." *Cumberland Farms v. Browning–Ferris Indus.*, 120 F.R.D. 642, 646 (E.D.Pa.1988). Moreover, typicality is not defeated simply because the plaintiff suffers injuries to a different degree than the other members of the class. *Hurt*, 151 F.R.D. at 560. Indeed, "[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Baby Neal*, 43 F.3d at 58 (quoting *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir.1992)). Rather, if the named plaintiff is challenging a particular practice and suffers a specific injury, he or she can represent a class, the members of which may be suffering from other injuries, as long as all the injuries flow from the same challenged practice. *Id.*

 Here, plaintiff is challenging MCHA's alleged practice of failing to comply with federal laws and regulations regarding lead-based paint in Section 8 rental properties. The injuries claimed all flow from that alleged practice. Moreover, there appears to be no unique defenses applicable to plaintiff's claim, *see, e.g., Kas v. Financial General Bankshares, Inc.*, 105 F.R.D. 453, 461–62 (D.D.C.1984) (finding no typicality where defendant had a defense peculiar to the putative representative plaintiff), nor does there appear to be any antagonism between plaintiff's position and that of the other class members. *See Sley v. Jamaica Water & Utils., Inc.*, 77 F.R.D. 391, 394 (E.D.Pa.1977) ("[T]he typicality requirement functions as a safeguard against inter-class conflicts and an assurance that the plaintiff's interests are more or less co-extensive with those of the class."). The court finds that the claims are sufficiently typical to allow plaintiff to represent the proposed class.

### 4. *Adequacy of Representation*

 When appraising the adequacy of a named plaintiff's representation:

> The inquiry that a court should make regarding the adequacy of representation requisite of Rule 23(a)(4) is to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, [2] that he or she has obtained adequate counsel, and [3] that there is no conflict between the individual's claims and those asserted on behalf of the class.

*Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir.1988) (citations omitted). The court has no reason to doubt that plaintiff is able and willing to press both her claims and those of her fellow class members, nor is there any indication that plaintiff's interests conflict with those of the class. *See Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 128–29 (3d Cir.1987) (noting that absence of conflict and vigorous prosecution are "two principal factors in determining the adequacy of representation"); *overruled in part on other grounds by Reed v. United Transp. Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). With respect to plaintiff's counsel, the court finds that he is "qualified, experienced, and generally able to conduct the proposed litigation," and appears to have no "interests antagonistic to those of the class." *Wetzel*, 508 F.2d at 247. Counsel for plaintiff represented to the court that he devotes virtually all of his time to toxic tort cases, including the representation of numerous children allegedly poisoned by lead-based paint. Moreover, counsel represented that he is one of a small handful of lawyers who has been involved in several class actions of similar nature. *See* Motion for Preliminary Approval, Ex. C ("Affidavit of Peter Kohn, Esq."). The court also notes that nothing in the submissions and arguments by counsel, suggests that counsel would not be able to represent the class adequately. Therefore, the court finds that plaintiff is an adequate representative of the proposed class.

### B. *Requirements of Rule 23(b)(2)*

 The proposed class may be maintained where "the party opposing the class

has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2); *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142 (3d Cir.1998). "[T]his requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Baby Neal*, 43 F.3d at 58. Further, "[w]hile 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive." *Barnes*, 161 F.3d at 143. Cohesiveness is required because "unnamed members are bound by the action without the opportunity to opt out" and individual issues could overwhelm the process and make the suit unmanageable. *Id.* at 143 (citing *Santiago v. City of Philadelphia*, 72 F.R.D. 619 (E.D.Pa. 1976)).

 As to the Rule 23(b)(2) class, plaintiff alleges that, as a matter of policy, practice, and procedure, MCHA has acted in a manner contrary to federal law and the applicable regulations. *See* Tr. 10/4/99 at 3. Further, plaintiff seeks an injunctive and declaratory relief requiring MCHA to comply with those regulations.

The court finds that plaintiff has met the requirements of Rule 23(b)(2). Indeed, plaintiff has alleged that MCHA has refused to comply with federal law and regulations generally applicable to the entire class. Thus, injunctive relief of the kind requested by plaintiff would benefit the class as a whole. *Baby Neal*, 43 F.3d at 58–59. The court also finds that the class and the plaintiff's claims are cohesive, in that all members of the class would be subject to the same or similar injuries due to MCHA's alleged noncompliance and are entitled to declaratory relief. *Barnes*, 161 F.3d at 142–44.[10]

The court will therefore approve the proposed class as previously defined for purposes of settlement. The court now turns to the terms of the proposed settlement.

### C. Preliminary Approval of the Class Settlement

 The parties have proposed a settlement of this action and have submitted it for the court's preliminary approval. *See* Fed.R.Civ.P. 23(e). The standards for approval of a class action are well-settled. The court will examine the proposed settlement to determine if it is fair, adequate, and reasonable. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 785 (3d Cir.1994); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 118 (3d Cir.1990); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F.2d 956, 965 (3d Cir.1983). In making this determination, the court must be guided by the factors set forth in the leading case, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir.1975):

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157. "The settlement must be both substantively reasonable compared to the likely rewards of litigation and the result of good faith, arms length negotiations." *Fisher Bros. v. Cambridge–Lee Indus., Inc.*, 630 F.Supp. 482, 487 (E.D.Pa.1985); *see also General Motors*, 55 F.3d at 785; *Lake v. First Nationwide Bank*, 900 F.Supp. 726, 731, 732 (E.D.Pa.1995) (finding that because risk that collusive settlement agreement may be reached that fails to satisfy class, reviewing court must ascertain that settlement was

---

**10.** In *Barnes*, the Third Circuit affirmed the district court's decertification of a Rule 23(b)(2) medical monitoring class of cigarette smokers suing tobacco companies, agreeing that addiction, causation, and affirmative defenses presented individual issues that rendered the class insufficiently cohesive to permit continued class certification. *Barnes*, 161 F.3d at 143.

the product of "good faith, arms-length negotiations" before approving); NEWBERG ON CLASS ACTIONS, § 11.25, at 11–37 (quoting *Manual on Complex Litigation* when stating that "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement" "). A finding that the settlement satisfies these factors establishes an initial presumption of fairness. *See General Motors,* 55 F.3d at 785.

Briefly summarizing the terms of the proposed Settlement Agreement, MCHA will provide notice to the tenants of the potential risk for lead-based paint exposure, the hazards of such exposure, the symptoms of any poisoning, and precautions to be taken. MCHA will further provide written notice to prospective tenants regarding the importance of having the tenant inform their health care providers of the risk of lead-based paint exposure. MCHA will seek HUD approval to amend the addendum to the leases for Section 8 properties to include a lead-based paint warning and to insert space for the landlord's disclosure of known lead-based paint, additional information regarding the exposure, and a list of reports and records that have been provided to prospective tenants. *See* Proposed Settlement Agreement, Section II.B.2.

MCHA will also provide notice of the lead requirements to the landlords and will penalize any landlord who refuses to make proper repairs and will reissue vouchers to tenant. *See id.,* Section II.B.6. Further, if MCHA learns that a child has an elevated blood level, it will arrange for a qualified inspector to test the property and provide a detailed report to MCHA, who will then forward the report to both tenant and landlord. MCHA will ensure that the landlord completes paint treatment, if necessary, within thirty days, and that the landlord inspects the property after the appropriate treatment is completed. *See id.,* Section II.B.4. In addition, MCHA will appoint a liaison to the Montgomery County Health Department ("MCHD") to assist in providing tenants with information about lead-based paint. *See id.,* Section II.B.5. Given that the relief sought is limited to injunctive and declarative relief, payment of money damages to individual class members is not implicated in this case.

The court will retain jurisdiction over the enforcement of the Settlement Agreement for two years after final court approval. If within the two-year period, MCHA fails to comply with the terms of the Settlement Agreement on a class-wide basis despite being given a forty-five day opportunity to cure such failure, the class may turn to this court and seek specific performance. In the event that MCHA is in violation of the Settlement Agreement with respect to the circumstances of an individual class-member tenant, the individual class member may bring his or her dispute only before an independent hearing officer in accordance with the procedures set forth in the HUD regulations. Failure to follow these procedures will result in the dismissal of the individual class member's enforcement action. *See id.,* Section II.B.9. Upon conclusion of the two-year period, the Settlement Agreement will expire by its own terms and the court's jurisdiction over the agreement will likewise expire without further order of the court. Also, after the two-year period, any tenant may bring a new lawsuit in any court of competent jurisdiction regarding MCHA's compliance with lead paint regulations.

MCHA has also agreed to pay up to $100,-000[11] in counsel fees to class counsel, subject to final approval by this court.[12] Notice of this proposed fee payment will be made to

---

11. Plaintiff's counsel notes that he has been in practice for seven years and documented 514.5 hours, at an hourly rate of $180 and that co-counsel James Johnson, practicing for nineteen years, had documented 238 hours at an hourly rate of $245 on this matter. *See* Mem. of Law in Support of Motion for Preliminary Approval at 4

n. 2. Thus, the proposed award is a substantial reduction from counsels' expended hours.

12. The per se ban on simultaneous negotiation of settlement terms and attorney's fees pronounced in *Prandini v. National Tea Co.,* 557 F.2d 1015, 1020–21 (3d Cir.1977), has been overruled by the Supreme Court in *Evans v. Jeff D.,* 475 U.S. 717,

the individual class members who will be given an opportunity to be heard with respect to the proposed fee amount. Further, despite the agreement of the parties, and even in the absence of any objections, the court must independently scrutinize the amount of the fees. *See General Motors*, 55 F.3d at 819–20 (emphasizing necessity for judicial review of fee awards in all class action settlements). If any portion of the fee amount is deemed to be unreasonable by the court, it will be returned to MCHA.

The class, in turn, would release MCHA from any further liability relating to claims for equitable or· declaratory relief arising from violations stated in the complaint in this matter or from any omission occurring within the two-year enforcement period, and upon final court approval of the Settlement Agreement, the plaintiffs agree to dismiss the case with prejudice.

■ The court finds, at least preliminarily, upon consideration of the *Girsh* factors, that the proposed settlement is fair, adequate, and reasonable. The proposed settlement will remedy current conditions and provides a viable mechanism to ensure that MCHA complies with the requirements of the Housing Act and the Lead Act in the future. Moreover, the court will give due regard to the advice of the experienced counsel in this case who recommend the settlement, *see Austin v. Pennsylvania Dep't. of Corrections*, 876 F.Supp. 1437, 1472 (E.D.Pa. 1995) (stating that significant weight should be attributed "to the belief of experienced counsel that settlement is in the best interest of the class"), who have negotiated this settlement at arms-length and in good faith. Thus, the court finds that the proposed settlement is fair, adequate, and reasonable.

D. *Notice to the Class*

■ The final issue the court must take up is the question of notice to the class of the conditional approval of the class, *see* Fed. R.Civ.P. 23(c)(2), and of the preliminary approval of the settlement. *See* Fed.R.Civ.P. 23(e). Notice to the class members is essential to providing each member with due process of law, since members will be bound to the resolution of this case unless they opt out. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313–14, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Because the settlement has been tentatively approved, notice of the certification and the proposed settlement can be combined. *See Manual for Complex Litigation* § 30.212, at 226. Where the addresses of putative class members are known, or can be discovered through reasonable efforts, individual notices must be sent to each member. *See* Fed.R.Civ.P. 23(c)(2); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Mullane*, 339 U.S. at 318–19, 70 S.Ct. 652. Otherwise, "notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 325 (E.D.Pa.1993) (citing *Mullane*, 339 U.S. at 317–18, 70 S.Ct. 652). The absence of receipt by some class members of notice is not fatal to a notice plan—actual notice to everyone is not a prerequisite. *See Mullane*, 339 U.S. at 313–19, 70 S.Ct. 652; *Manual for Complex Litigation* § 30.211, at 223.

■ At the hearing held on January 3, 2000, counsel for MCHA represented that notice would be by publication in two local newspapers of general circulation, the Montgomery County Record and Pottstown's local newspaper. Upon further questioning by the court, counsel for MCHA agreed that notice would occur not only by publication but also by a mailing to all members in the proposed class. Tr. 1/3/00 at 21.

The court accepts this representation and agrees that the methods proposed and agreed upon by the parties are reasonable in that they will provide sufficient notice to the class members under the circumstances in this case. Thus, the court will approve the proposed methods of notice.

738 n. 30, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986), at least as to statutory fee actions under 42 U.S.C. § 1988. *See Ashley v. Atlantic Richfield Co.*, 794 F.2d 128, 137–38 & n. 16 (3d Cir.1986) (recognizing *Prandini*'s overruling). Applying either the letter or the spirit of *Prandini* to the instant case, the court finds that there was no violation, given the fair resolution of the case and the discretion vested to the court to set the actual fee to be paid. *See Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 522 (1st Cir.1991). This determination, however, has no bearing on the as of yet undecided issue of what attorney's fees would be appropriate in this case.

## III. CONCLUSION

The court concludes that the class proposed by plaintiff shall be conditionally certified for purposes of settlement, that the settlement proposed by the parties shall be preliminarily approved, and that notice shall issue to the class members pursuant to the notice plan that has been proffered by the parties.

An appropriate order shall be entered.

### ORDER

AND NOW, this 20th day of April, 2000, upon consideration of the plaintiff's Motion for Preliminary Approval of Settlement Agreement (doc. #68), after a hearing on October 4, 1999 and January 3, 2000, and based upon the reasoning contained in the accompanying memorandum, it is hereby **ORDERED** that the motion is **GRANTED** as follows:

1. This action shall be maintained, for settlement purposes, as a class action pursuant to Federal Rule of Civil Procedure 23, with a class as defined in Recital 2a. of the Proposed Settlement Agreement filed of record as of April 18, 2000, and with Latanya Collier as the class representative. The court appoints Peter R. Kohn, Esq. and his firm and James W. Johnson, Esq. and his firm as class counsel;

2. The certification of the class is conditioned on approval of the settlement, and in the event the settlement is not approved, the certification shall be vacated;

3. The court finds that the Settlement Agreement filed of record on April 18, 2000, appears, upon preliminary review, to be fair, adequate, and reasonable, and shall be submitted to the class members for their consideration and for a hearing to determine whether the settlement will be approved by the court;

4. A hearing shall be held on **Thursday, June 29, 2000, at 9:30 a.m.**, in Courtroom 7A, United States Courthouse, 601 Market St., Philadelphia, PA, to consider whether the court should give final approval to the settlement;

a. Objections to the settlement by class members will be considered by the court if received by class counsel on or before **June 1, 2000.** Class counsel shall serve the defendant and file with the court copies of all such objections on or before **June 19, 2000;**

b. At the hearing, class members may be heard orally in support of or in opposition to the settlement, provided that such persons file with the Clerk. of Court, and serve on counsel of record for the parties to the proposed settlement, on or before **June 1, 2000**, notification of the desire to appear personally, and a statement of their position and reasons for it;

c. Class counsel and defendant's counsel should be prepared at the hearing to respond to any objections filed by the class members and to provide other information, as appropriate, bearing on whether or not the settlement should be approved; and

5. Defendant's counsel is directed to give notice of the hearing and the proposed settlement to the class members by mailing, not later than **May 1, 2000**, a copy of the notice (in substantially the form of notice filed of record on April 18, 2000), in the name of the Clerk of Court, by third-class mail, postage prepaid, to the potential class members and by publication of a copy of the notice (in substantially the form filed of record on April 18, 2000), in the Montgomery County Record and the Pottstown local newspaper.

### AND IT IS SO ORDERED.