Kenneth **PASSAFIUME** individually and on behalf of all others similarly situated, Plaintiff,

v.

**NRA GROUP, LLC d/b/a National Recovery Agency, Defendant.**

No. CV 10–796(AKT).

United States District Court, E.D. New York.

Nov. 30, 2010.

Joseph Mauro, The Law Office of Joseph Mauro, LLC, West Islip, NY, for Plaintiff.

Douglas Garrett Tischler, Rivkin Radler, LLP, Uniondale, NY, for Defendant.

## ORDER

A. KATHLEEN TOMLINSON,
Magistrate Judge:

### I. PRELIMINARY STATEMENT

Plaintiff Kenneth Passafiume brings this action, on behalf of himself and all others similarly situated, against defendant NRA Group, LLC d/b/a National Recovery Agency ("NRA") pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Plaintiff alleges that Defendant's scripted and deceptive telephone messages used in order to collect consumer debts violates the FDCPA. Presently before the Court is a joint motion seeking an Order: (1) certifying the proposed Class for settlement purposes; (2) preliminarily approving of the proposed Settlement Agreement; (3) direct-

ing notice to the Class; and (4) setting dates for opt-outs, objections, and a hearing under Federal Rule of Civil Procedure 23(c)(2). *See* DE 9.

## II. FACTUAL BACKGROUND [1]

Plaintiff alleges that the Defendant placed numerous, constant and persistent telephone calls to Plaintiff and left numerous messages on Plaintiff's voicemail. Am. Compl. ¶¶ 8–9. The Defendant allegedly used an automated machine to leave the following automated message on Plaintiff's voicemail on a repeated basis:

> Hi. This is Jennifer. Please return my phone call to 1800–360–4319. Again, the number is 1800 360–4319. When returning the call please reference master number R86832. Once again that master number is R86832.

*Id.* ¶ 12. Plaintiff alleges that this information comprised the entire message continuously left by Defendant on Plaintiff's voicemail. *Id.* ¶ 13. The Amended Complaint asserts that this repeated message failed to meaningfully identify the Defendant and failed to include the notices required by a debt collector pursuant to 15 U.S.C. § 1692e(11). *Id.* ¶¶ 10–11. Thus, Plaintiff claims that these messages were misleading in that they were attempts by Defendant to deceptively induce Plaintiff into returning the call by failing to indicate Defendant's identity as a debt collector. *Id.* ¶¶ 15, 18.

Based on the above conduct by Defendant, Plaintiff brought this action for violations of the FDCPA on behalf of himself and a proposed class consisting of all persons in the State of New York to whom Defendant placed a telephone call and left a message substantially similar or materially identical to those left on Plaintiff's voicemail during the one-year period immediately preceding the filing of this action. *Id.* ¶ 19.

## III. DISCUSSION

### A. The Fair Debt Collection Practices Act

■ "The FDCPA was enacted to 'eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Bank v. Pentagroup Financial, LLC,* No. 08–CV–5293, 2009 WL 1606420, at *2 (E.D.N.Y. June 9, 2009) (quoting 15 U.S.C. § 1692(e)). The FDCPA regulates the collection of consumer debts defined as debts incurred "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *see also Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002) ("The FDCPA was passed to protect consumers from deceptive or harassing actions taken by debt collectors."). When evaluating an FDCPA claim, courts apply the objective "least sophisticated consumer" standard. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993) (adopting the objective standard known as the "least sophisticated consumer" to ensure the FDCPA "protects all consumers, the gullible as well as the shrewd"); *see also Pifko v. CCB Credit Services, Inc.,* No. 09–CV–3057, 2010 WL 2771832, at *3 (E.D.N.Y. July 7, 2010); *Ostrander v. Accelerated Receivables,* No. 07–CV–827, 2009 WL 909646, at *5 (W.D.N.Y. Mar. 31, 2009).

Section 1692e of the FDCPA provides that "[a] debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A single violation of Section 1692e is sufficient to establish civil liability under the FDCPA. *See* 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter"). The Section specifically identifies conduct by a defendant which violates the statute. *See* 15 U.S.C. § 1692e(1)–(16); *see also Clomon,* 988 F.2d at 1318 ("The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban.").

Such conduct includes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." 15 U.S.C. § 1692e(10); *see also Russell v.*

---

1. This section is drawn from Plaintiff's Amended Complaint. However, as noted in the proposed Settlement Agreement, the Defendant denies all claims and contentions in the Complaint.

*Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir.1996) (finding that "deceptiveness" includes ambiguity); *Leyse v. Corporate Collection Servs., Inc.*, No. 03 Civ. 8491, 2006 WL 2708451, at *6 (S.D.N.Y. Sept. 18, 2006) ("Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent."). Additional improper conduct includes "[t]he failure to disclose ... in [the] initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11); *see also Pifko*, 2010 WL 2771832, at *5 (holding that "messages left on consumers' answering machine that fail to disclose that the speaker is a debt collector seeking to collect a debt have been found to be in violation of section 1692d(11)"); *Ostrander*, 2009 WL 909646, at *6 (concluding two telephone messages from an individual stating she "sought a return call from plaintiff regarding a certain account" is a "communication" within the meaning of the FDCPA); *Leyse*, 2006 WL 2708451, at *6 (determining that pre-recorded messages, leaving a name and number to call regarding an "important matter" constituted a communication under FDCPA).

Pursuant to Section 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d; *see also Bank*, 2009 WL 1606420, at *5 (stating that the list of specified violations in Section 1692d is "explicitly not exhaustive"). Conduct such as "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" and "the placement of telephone calls without meaningful disclosure of the caller's identity" are examples of the type of conduct that violates the statute. 15 U.S.C. § 1692d(5)–(6); *see also Ostrander*, 2009 WL 909646, at *6 ("A telephone message that merely states the name of a person to contact and a telephone number at which

to reach that person does not provide meaningful disclosure of the caller's identity."); *Leyse*, 2006 WL 2708451, at *4 (holding that Section 1692d requires a "meaningful" disclosure of the debt collector's identity).

When a plaintiff establishes a violation, he or she may recover statutory damages in an amount not to exceed $1,000, plus any actual damages sustained. *See* 15 U.S.C. § 1692k(a)(1), (a)(2)(A). Recovery in FDCPA class actions are limited to $1,000 statutory damages for each named plaintiff, and the lesser of $500,000 or one percent of the net worth of the defendant debt collector for the remainder of the class. *See* 15 U.S.C. § 1692k(a)(1), (a)(2)(B).

## B. Rule 23 Motion

Under Federal Rule 23(c)(1) " 'the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date.' " *Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 362 (E.D.N.Y.2006) (quoting *Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 181 (E.D.Pa.2000)). Indeed, "[c]ertification of a class for settlement purposes only is permissible and appropriate." *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y.2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–21, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)).

Rule 23(a) provides that:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). In addition to satisfying Rule 23(a), a plaintiff must satisfy one of three criteria set forth in Rule 23(b). *See Comer v. Cisneros*, 37 F.3d 775, 796 (2d Cir.1994). Here, Plaintiff Passafiume seeks certification under Rule 23(b)(3) which pro-

vides that certification is appropriate when "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

### 1. Rule 23(a)

#### A. Numerosity

A plaintiff is not obligated to identify the exact number of class plaintiffs. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). However, the Second Circuit has previously determined that numerosity is presumed at a figure of 40. *Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). There is no dispute over this requirement in the case now before this Court. In fact, the Joint Motion for Preliminary Approval for Class Action Settlement ("Joint Mot.") states that the class members total 20,498. *See* Joint Mot. ¶ 4(e).

#### B. Common Questions of Fact of Law

Commonality is satisfied "if plaintiffs' grievances share a common question of law or fact." *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997). Put another way, what is needed is a common nucleus of operative facts or an issue that affects all members of the class. *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166–67 (2d Cir.1987). Indeed, this requirement is "qualitative rather than quantitative—that is, there need only be a single issue common to all members of the class." *Savino v. Computer Credit, Inc.,* 173 F.R.D. 346, 352 (E.D.N.Y.1997). Therefore, individual circumstances of the class members may differ without precluding class certification. See *Vengurlekar v. Silverline Tech., Ltd.,* 220 F.R.D. 222, 227 (S.D.N.Y.2003).

Here, where the central issue in the case is whether the Defendant placed substantially similar or materially identical voicemail messages which violated the FDCPA, a common issue exists sufficient to satisfy this requirement.

#### C. Typicality

Typicality is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir.1993). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Id.*

In this case, all the alleged class members' claims arose out of identical or substantially similar voicemails, resulting in the same violations of the FDCPA being implicated for each class member. Thus, the class members' claims are typical of one another.

#### D. Adequacy of Representation

To satisfy this factor, a plaintiff must demonstrate two elements: (1) "there is no conflict of interest between the named plaintiffs and other members of the plaintiff class" and (2) "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A. v. Giuliani,* 126 F.3d 372, 378 (2d Cir.1997) (internal citations and quotations omitted); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29 (2d Cir.2009) (conceptualizing first prong as whether "plaintiff's interests are antagonistic to the interest of other members of the class").

In this matter, Plaintiff's counsel, Joseph Mauro, Esq., of the Law Office of Joseph Mauro, is qualified and experienced to serve as counsel to a class certified under the FDCPA. Specifically, Mr. Mauro has represented numerous plaintiffs in this District and before this Court in FDCPA actions. Mauro's website reflects the fact that FDCPA cases comprise the bulk of his law practice. *See* http://www.josephmauroesq.com. Thus, the Court finds that counsel will adequately represent the class. Further, the Court does not identify any antagonism between Plaintiff Passafiume's claims and those

of the proposed class that would interfere with Plaintiff's ability to act as class representative. As noted above, the proposed class consists of those who received an identical or substantially similar message to that of the Plaintiff.

## 2. Rule 23(b)

The parties allege that Rule 23(b)(3) is satisfied as the class settlement is the superior and appropriate method for the fair and efficient resolution of this matter. *See* Joint Mot. ¶ 3(e). With respect to Rule 23(b)(3), the Court's inquiry is a two-step process. "In order to meet the predominance requirement of rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001); *see also Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir.2002) (finding predominance met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof"). If predominance is found, a Court must also determine whether "a class action is superior to other available methods for ... adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

▮▮▮ The Court finds that the issues regarding the identical or substantially similar voicemails from Defendant predominate over the sole issue that is subject to individualized proof, that being the identity of those who received the voicemail. Likewise, a class action here appears to be the superior method for the "fair and efficient adjudica-

tion" of a suit potentially involving 20,498 individuals with nearly identical claims. Accordingly, the Court certifies a class consisting of all persons, who, according to Defendant's records: (a) had mailing addresses within New York State; and (b) between February 23, 2009 and February 22, 2010; (c) received a message on their telephone answering machine materially identical or substantially similar to the message received by Plaintiff, as indicated in the Plaintiff's Complaint in this action.

## C. Preliminary Approval of Class Settlement

▮▮▮ The parties, having reached a tentative settlement of this action, seek preliminary approval of the proposed settlement pursuant to Rule 23(e). Preliminary approval of a proposed settlement is step one of a two-step process before a class action can be settled. *In re Nasdaq Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). A preliminary evaluation into the fairness of the settlement is undertaken prior to notice. *Id.* However, "[i]n the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval." *Karvaly v. eBay Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y.2007). Therefore, a full fairness analysis is unnecessary at this stage. *Reade–Alvarez*, 237 F.R.D. at 33.[2] Preliminary approval is appropriate where

it is the result of serious, informed, non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where

---

**2.** The factors to consider in the final evaluation of a proposed settlement which will occur at a future date are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a

greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir.2000);

the settlement appears to fall within the range of possible approval. *Id.*

Pursuant to the Settlement Agreement, a fund of $9,819.82 is to be established from which the Plaintiff/Class Representative would receive $1,000 and the remaining $8,819.82 would be shared *pro rata* among those class members who return a claim form and do not opt out. *See* Joint Mot. ¶¶ 4(a)-(b) and Ex. A ¶ 29. The parties also agree that Defendant is to pay attorneys' fees and costs in the amount of $15,000. Mot. ¶ 4(c) and Ex. A ¶ 30.

▉ After a review of the Settlement Agreement, the Court finds that it does not appear to be collusive, but, instead, looks to be the result of serious negotiations spanning several months. In fact, the Court is aware and approved two Stipulations extending the time for Defendant to Answer the Complaint since the parties were engaged in substantive discussions to resolve this action. *See* DE 2, 4. Further, the Settlement Agreement is void of any obvious deficiencies since the class representative is to receive the $1,000 statutory damages proscribed under 15 U.S.C. § 1692k. In addition, the agreed upon sum of $15,000 for attorneys' fees and costs, in the Court's judgment, does not appear to be excessive. Plaintiff's counsel will have an opportunity to make an application for these fees during the fairness hearing. Further, the $8,819.82 fund to be paid out to class members does not on its face evidence unfairness. As counsel point out in their proposed notice to class members, if approximately 15% of the class members send back their claim form, each responding class member would receive $2.87. *See* Joint Mot. at Ex. B. Moreover, under 15 U.S.C. § 1692k, if a determination were to be made that Defendant violated the FDCPA, the Defendant would be obligated to pay the lesser of 1% of its net worth or $500,000. Plaintiff believes that the Defendant's net worth is approximately $881,982. *See* Joint Mot. at Ex. B. Thus, 1% of $881,982 yields a sum of $8,819.82, the amount of the proposed settlement for the class members. Since there are no grounds apparent at this time to question the fairness of the Agreement, the Court preliminarily approves the Settlement Agreement between the parties.

### D. Notice

"Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval." *American Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009). Pursuant to Rule 23(c)(2)(B), when a class is certified under Rule 23(b)(3), the Court must direct to the class members "the best notice practicable under the circumstances, including individual notice to all members, who can be identified through reasonable effort." With regard to class certification pursuant to a settlement, the notice "must fairly apprise the prospective members of the class of the pendency of the class action, the terms of the proposed settlement, and the options that are open to them in connection with the proceedings, including the option to withdraw from the settlement." *Reade–Alvarez*, 237 F.R.D. at 34 (*citing Weinberger v. Kendrick*, 698 F.2d 61, 70–71 (2d Cir.1982)).

▉ The Court finds that the proposed notice meets the requirements set forth under Rule 23(c)(2)(B). The proposed notice here contains all the necessary information, including the nature of the lawsuit, the class, the settlement terms, and the options available to the members of the class. *See* Joint Mot. Ex. B. In addition, the Settlement Agreement states that the Defendant shall mail, by first class mail, the Class Notice and Claim Form to each class member at his/her last known address.

### IV. CONCLUSION

For the reasons set forth above, the parties' joint motion to certify the settlement class and for preliminary approval of the class settlement is GRANTED. The parties are directed to participate in a telephone Conference on December 2, 2010 at 10:30 a.m. to discuss the various dates and deadlines for notice, opt-outs, exclusions, objec-

tions, and a hearing under Rule 23. Plaintiff's counsel is requested to initiate the call to Chambers.

**SO ORDERED.**