**Robert F. FRY, Jr., on behalf of himself and all others similarly situated, Plaintiff,**

v.

**HAYT, HAYT & LANDAU, Defendant.**

**No. 00–114.**

United States District Court, E.D. Pennsylvania.

Dec. 22, 2000.

David A. Searles, Donovan, Miller, LLC, Philadelphia, PA, James A. Francis, Francis & Mailman, PC, Philadelphia, PA, for plaintiff.

Jonathan Justin Greystone, Margolis, Edelstein, & Scherlis, Philadelphia, PA, Samantha L. Miller, Margolis Edelstein, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Robert F. Fry, Jr., on behalf of himself and others similarly situated, has brought this action against the defendant, Hayt, Hayt & Landau, seeking damages stemming from a collection letter sent by defendant to plaintiff and others that allegedly violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Pennsylvania Unfair Trade Practices and Consumer Law, 73 P.S. § 201–1 *et seq.* ("CPL"), the Pennsylvania Debt Collection Trade Practices Regulations adopted under the CPL ("Regulations"), and the unfair and deceptive acts and practices of other states.

Having reached a settlement agreement, the plaintiff and defendant have sought this court's conditional certification of the proposed class action and, preliminary approval of the settlement, as well as approval of the proposed notice to the putative class members. Following a hearing on this matter and upon consideration of the parties' briefs and relevant authorities, the court finds that the proposed class meets the requirements of Rule 23 that the settlement is fair, adequate, and reasonable, albeit barely, and that the notice comports with the strictures of due process. Therefore, the court will conditionally certify the proposed class, will preliminarily approve the settlement, and will also approve with slight revisions the proposed form of notice to be sent to the putative class.

## I. BACKGROUND

On January 11, 1999, Hayt, Hayt, and Landau ("HHL"), a law firm based in New York State, sent plaintiff Fry a letter in an attempt to collect an alleged consumer debt of $9,511.23 which he owed to Chrysler Financial. In his complaint plaintiff asserted that this letter violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Pennsylvania Unfair Trade Practices and Consumer Law, 73 P.S. § 201–1 et seq. ("CPL"), the Pennsylvania Debt Collection Trade Practices Regulations adopted under the CPL ("Regulations"), and the unfair and deceptive acts and practices of other states.

Specifically, the plaintiff claims the letter violated the FDCPA as to the plaintiff and the class in that it: 1) falsely represented or implied that the letter came from an attorney when it fact it was signed by Shawn Fox, an employee, not an attorney, of HHL; 2) failed to inform effectively, in the initial communication or five days later, the information required by 15 U.S.C. § 1692k; and 3) employed threatening and confusing language which contradicted, overshadowed, and obscured the validation language required by section 1692g(a).[1]

---

1. The text of the collection letter from Hayt, Hayt & Landau reads as follows:

> As attorneys for the client listed above [Chrysler Financial], we have been forwarded the above account in order to secure payment

Apart from these class action claims, the plaintiff also alleges that the defendant violated the FDCPA as to himself by threatening to take legal action against him which it could not take or which it did not intend to take. The plaintiff in his complaint also alleges that these specific violations of the FDCPA also violated the Pennsylvania Unfair Trade Practices and Consumer Law, 73 P.S. § 201–1 et seq. ("CPL") and the unfair and deceptive acts and practices statutes ("UDAP") of other states.

After the complaint and answer were filed and months of discovery ensued, the parties began settlement negotiations. On July 31, 2000, the parties filed a joint motion for conditional approval of the proposed class, preliminary approval of the proposed settlement, and approval of the form of notice to class members (doc. no. 19). On August 18, 2000, the court held a hearing on the motion at which the court heard expert testimony from Professor Manuel H. Newburger and oral argument from the parties' counsel. After considering the parties' submissions, the court finds that the proposed class meets the requirements of Rule 23, that the settlement

agreement is fair and reasonable, and that the form of notice complies with due process.

## II. DISCUSSION

■ Pursuant to Federal Rule of Civil Procedure 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date."[2] *Collier v. Montgomery County Housing Authority*, 192 F.R.D. 176, 181 (E.D.Pa.2000) (citing *Lusardi v. Xerox Corp.*, 747 F.2d 174, 177 (3d Cir.1984).) In order for the court to grant conditional approval of a class action, a plaintiff must establish the four prerequisites of numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R.Civ.P. 23(a)[3]; *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 624 (3d Cir.1996) (citations omitted). Furthermore, the plaintiff's cause of action must satisfy at least one of the three subsections of Rule 23(b). *See* Fed.R.Civ.P. 23(b); *Windsor*, 521 U.S. at 614, 117 S.Ct. 2231. For purposes of settlement only, the parties contend that section 23(b)(2) and 23(b)(3)[4] is applicable to

---

of the outstanding balance. Accordingly, you must send payment in full at this time or contact our office immediately.

Unless you dispute the validity of this debt, or any portion thereof, within thirty (30) days of receipt of this notice, we will assume that the debt is valid. If you notify us in writing within the 30 day period that the debt, or any portion thereof, is disputed, we will mail you verification of the debt or a copy of a judgment. Further, we will provide you with the name and address of the original creditor, if different from the current creditor.

If we fail to hear from you, we will take the appropriate action to protect our client's interest.

Please understand that this is an attempt to collect a debt and any information we obtain will be used for that purpose. All payments should be forwarded to this office. Make your check or money order payable to the client listed above. The above file number should be listed on all payments and correspondence mailed to this office to ensure the proper handling and crediting of your account.

Your account representative is: Shawn Fox.

2. In conditionally approving a class action, it is not necessary for the court to rule on the merits of the plaintiff's cause of action. *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 140 (3d Cir.1998) (citing *Eisen v. Carlisle & Jacquelin*,

417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)).

3. Federal Rule of Civil Procedure 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class.

4. Federal Rule of Civil Procedure 23(b) provides, in pertinent part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . .

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

(3) the court finds that the questions of law or fact common to the members of the class pre-

this lawsuit. Plaintiff claims that section 23(b)(2) applies because HHL allegedly acted on grounds generally applicable to the entire class. He also claims that section 23(b)(3) applies because common issues of law and fact predominate in this case and a class action is an efficient method for resolving this controversy.[5]

### A. Requirements of Rule 23(a)

#### 1. Numerosity

■ Plaintiff contends that the putative class members were composed of "[a]ll persons in the United States who, for the period from January 7, 1994 through the date of [f]inal [j]udgment in this action, were sent a [l]etter by HHL." *See* Settlement Agreement ¶ 2.2. At the August 18, 2000 hearing on this matter, the parties estimated that the class size was between 45,000 and 52,700 individuals. *See* 8/18/00 Tr. at 8.

■ To meet the superiority requirement, the plaintiff does not need to know the exact number of class members. *See Collier,* 192 F.R.D. at 182 (E.D.Pa.2000) (citations omitted); *In re Cephalon Securities Litigation,* No. CIV.A. 96–0633, 1998 WL 470160, at *2 (E.D.Pa. Aug.12, 1998); *Hurt v. Philadelphia Housing Authority,* 151 F.R.D. 555, 558 (E.D.Pa.1993). Instead, the class size only need be large enough that it makes joinder impracticable. *See* Fed.R.Civ.P. 23(a)(1). Although the courts have widely disagreed about what constitutes a sufficiently large-enough class size, the Third Circuit has noted that numbers larger than a thousand generally meet the numerosity requirement. *See Weiss v. York Hospital,* 745 F.2d 786, 807 (3d Cir.1984) (quoting 3B J. Moore, *Moore's Federal Practice,* ¶ 23.05[1], at 23–150 (2d ed.1982)). Although in this case the exact number of class members is not known, the defendant's assertion that it is at least 45,000 individuals demonstrates that the number of members would make joinder impracticable.[6] *See* 7A C. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* 169–86 (noting that although numbers as high as 350 have been found not to be impracticable, numbers in the thousands generally suffice).

#### 2. Commonality

■ Under Rule 23(a)(2), the commonality requirement is met if there is "at least one common question of law or fact." *Barnes,* 161 F.3d at 140 (citing *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir.1994)). "Because the requirement may be satisfied by a single common issue, it is easily met ..." *Baby Neal,* 43 F.3d at 56 (citing H. Newberg & A. Conte, 1 NEWBERG ON CLASS ACTIONS, § 3.10, at 3–50 (3d ed.1992)). For instance, a common question exists when "defendants have acted in concert or pursuant to a common design...." *Barnes,* 161 F.3d at 141. Similarly, a common question arises when "all class members are subject to the same harm." *Baby Neal,* 43 F.3d at 56 (citing *Hassine v. Jeffes,* 846 F.2d 169, 177–78 (3d Cir.1988)).

---

dominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

5. In reaching this settlement with the plaintiff, HHL has determined that it is in their financial interest not to oppose class certification. While such a tactical decision may be prudent for the defendant, it requires the court to be particularly vigilant in analyzing the proposed class and determining that it comports with the requirements of Rule 23. *Windsor,* 521 U.S. at 620, 117 S.Ct. 2231 (determining that courts must employ "heightened attention" to class action suits to ensure that they do not create an overly broad or a impermissible class); *General Motors Corp.,* 55 F.3d at 785 (finding that Rule 23 seeks, in part, to ensure that "the due process rights of absentee interests can be protected").

6. The burden of establishing the elements of Rule 23 is on the plaintiff. *See Schwartz v. Dana Corporation/Parish Division* 196 F.R.D. 275, 279 (E.D.Pa.2000) (citing *Windsor,* 521 U.S. at 614, 117 S.Ct. 2231; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)); *see also Kline v. Security Guards, Inc.,* 196 F.R.D. 261, 266 (E.D.Pa.2000) (citations omitted); *In re Neoware Systems, Inc. Securities Litigation,* No. Civ. A. 98–CV–2582, 2000 WL 1100871 (E.D.Pa. July 27, 2000) (citation omitted). *But see Welch v. Board of Directors of Wildwood Golf Club,* 146 F.R.D. 131, 136 (W.D.Pa.1993) (stating that "the burden is on the defendants to prove that the representation will be inadequate.")

In this case, plaintiff alleges that the same debt collection letter was distributed to all the putative class members. As stated above, the plaintiff asserts that this one letter sent to tens of thousands of individuals violated both the FDCPA as well as similar state statutes. Clearly, the collection letter sent by the plaintiffs involves similar issues of fact and law as required by Rule 23(a)(2). *See Smith v. First Union Mortgage Corp.,* No. CIV. A. 98–5360, 1999 WL 509967, at *2 (E.D.Pa. July 19, 1999) (finding "virtually identical deceptive debt collection letters" met the commonality requirement of Rule 23(a)(2)). Furthermore, the fact that the defendant sent this letter to tens of thousands of individuals establishes that the defendant acted pursuant to a common design and caused similar harms to the class members.

### 3. *Typicality*

Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class. *See* Fed.R.Civ.P. 23(a). The purpose of the typicality requirement is to ensure "against interclass conflicts and to insure that the interests of the named plaintiffs are more or less coextensive with those of the class such that the class action will be fully, fairly and vigorously prosecuted." *In re Life USA Holding, Inc. Ins. Litigation,* 190 F.R.D. 359, 366 (E.D.Pa.2000) (quoting *Baby Neal,* 43 F.3d at 55). In making this determination, "questions of law and fact need not be identical, but merely need to arise out of the same legal or remedial theory." *Collier,* 192 F.R.D. at 183 (quoting *Hurt,* 151 F.R.D. at 559). The claims of named representatives stem from the same legal or remedial theory as the class members when the claims arise "from the same event or practice or course of conduct that gives rise to the claims of class members." *Barnes,* 161 F.3d at 141 (cita-

tions omitted). In fact, as long as the same legal or remedial theory applies for all plaintiffs, a finding of typicality is permitted whether the named plaintiff suffers greater injuries than others, *see In re Flat Glass Antitrust Litigation,* 191 F.R.D. 472, 480 (W.D.Pa.1999), or whether factual differences exist between his and other class members' claims, *see Baby Neal,* 43 F.3d at 58.

In this case, the plaintiff asserts that HHL's sending of a particular collection letter violated federal and state debt collection statutes. He is challenging HHL's alleged practice of failing to comply with federal and state laws as they apply to that particular letter. Therefore, the injuries claimed by the plaintiff all flow from that allegedly illegal letter. *See Smith,* 1999 WL 509967, at *2 (finding typicality requirement satisfied where plaintiff showed that defendant sent same debt collection letter because "the claims of each class member and each representative are advanced under the same legal theory and arise from the same practice or course of conduct") (citing *Hoxworth v. Blinder, Robinson & Co.,* 980 F.2d 912, 923 (3d Cir.1992)).

Although the named plaintiff has filed individual claims under FDCPA and the CPL as well as claims for the entire class,[7] it is unnecessary for purposes of typicality that "the claims of each member of the class be identical." *Williams v. Empire Funding Corp.,* 183 F.R.D. 428, 439 (citing *Barnes,* 161 F.3d at 140–41). Instead, it is enough that "the harm complained of be common to the class". *Id.* (citing *Barnes,* 161 F.3d at 140–41). Furthermore, the named plaintiffs do not appear to have any defenses unique to their claims alone. *See, e.g., Jerry Enterprises of Gloucester County, Inc. v. Allied Beverage Group,* 178 F.R.D. 437, 442 (D.N.J. 1998) (noting that the presence of unique defense with respect to plaintiffs claim may

---

**7.** In his individual claims plaintiff alleges that defendant violated the FDCPA by "threatening to take any action that cannot legally be taken or that is not intended to be taken." *See* Plaintiff's Complaint ¶ 35(g), doc. no. 1. In addition, he claims that defendant violated the UDAP and CPL by "representing, directly or by implication, that certain action will be taken if the action cannot legally be taken or if the action is not

intended to be taken...." *Id.* ¶ 42(g). Although the plaintiff has not quoted which section of the letter violates these statutory provisions, it appears that he is referring to the third paragraph of the debt collection letter dated January 11, 1999. That paragraph states that "if we fail to hear from you, we will take the appropriate action to protect our client's interest." *See Id.* Appendix A.

defeat a finding of typicality). Nor does there appear to be any antagonism between plaintiff's position and that of the other class members. *See Lake v. First Nationwide Bank,* 156 F.R.D. 615, 624 (E.D.Pa.1994) (indicating that a finding of antagonism between the named representatives and the other class members defeats a finding of typicality) (citing *Sley v. Jamaica Water & Utils., Inc.,* 77 F.R.D. 391, 394 (E.D.Pa. 1977)).

### 4. *Adequacy of Representation*

In determining whether the plaintiff has satisfied the requirement of adequacy of representation under Rule 23(a)(4), the plaintiff must show the following:

that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, [2] that he or she has obtained adequate counsel, and [3] that there is no conflict between the individual's claims and those asserted on behalf of the class.

*Hassine v. Jeffes,* 846 F.2d 169, 179 (3d Cir.1988) (citations omitted). Nothing in the record suggests that plaintiffs have been unwilling or unable to prosecute the claims of the putative class members. *See Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123, 128–29 (3d Cir.1987) (noting that vigorous prosecution of claims by named representative is important factor in meeting the adequacy of representation requirement), *overruled in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). Although plaintiff seeks recovery in full for his own claims in addition to his pro rata share of the class claims, this apparent conflict, as discussed below, in the context of this case, is not fatal because some form of recovery beyond the pro rata share of the common fund is expressly permitted under the statutory scheme of FDCPA. *See Wind-*

*sor,* 521 U.S. at 625, 117 S.Ct. 2231 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."); *Grasty,* 828 F.2d at 128–29 (noting that absence of conflict is another important factor "in determining the adequacy of representation"), *overruled in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989).

Finally, the court finds plaintiff's counsel is "qualified, experienced, and generally able to conduct the proposed litigation." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.1975). Counsel for plaintiff represented to the court that they have "substantial experience in class action litigation." *See* Motion for Preliminary Approval ¶ 2.06, doc. no. 19. During the August 18, 2000 hearing on this matter, counsel, in response to questions concerning the case, related counsel's successful experience in prosecuting other cases of this type. *See* 8/18/00 Tr. 14, 15. The court also notes that there is no indication, either in the papers submitted to this court or in oral argument on this settlement proposal, suggesting counsel would be unable to provide capable representation to the putative class members.

### B. *Requirements of Rule 23(b)(3)*

In addition to meeting the four requirements of Rule 23(a), the plaintiff must also demonstrate that he has met one of the three requirements of Rule 23(b). *See Williams,* 183 F.R.D. at 429 (citing *Windsor,* 521 U.S. at 614, 117 S.Ct. 2231; *Barnes,* 161 F.3d at 139–40). In the present case, plaintiffs contend that they satisfy the requirements for Rule 23(b)(2) and Rule (b)(3). For the reasons enumerated below, the court finds that the parties have shown that they qualify for class certification under Rule 23(b)(3).[8]

---

8. Although the parties have also sought approval of class certification under Rule 23(b)(2), the Third Circuit in *In re School Asbestos Litigation,* 789 F.2d 996, 1007 (3d Cir.1986) affirmed a district court's ruling that Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." In affirming the lower

courts decision, the Third Circuit noted that "[p]recedent supports the district court's view that an action for money damages may not be maintained as a Rule 23(b)(2) class action." *Id.* (citations omitted). In the settlement agreement, the plaintiffs not only seek a permanent injunction preventing the defendants from ever sending out a similar letter they received, they also are

Rule 23(b)(3) permits a court to certify a class action if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Therefore, Rule 23(b)(3) mandates that the plaintiff meet the requirements of predominance and superiority. *See Smith,* 1999 WL 509967, at *2. In testing for predominance, the court should determine if the various claims of the plaintiffs are sufficiently cohesive to justify treating them all in one, single judicial forum. *See id.* (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997)). In the case of consumer or securities fraud, predominance is easily satisfied. *See id.* (citing *Windsor,* 521 U.S. at 623, 117 S.Ct. 2231). In this case in which the defendant sent nearly the exact same debt collection letter to all the plaintiffs, "[c]ommon questions of law and fact predominate because of the virtually identical factual and legal predicates of each class member's claim." *Id.*

In order to meet the test for superiority, the court must "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 307–08 (3d Cir.1998). The efficiency of the class action vehicle is demonstrated in this case by the economic or practical impossibility of litigating several, small suits as compared to the eminently feasible alternative of litigating them together. *See Smith,* 1999 WL 509967, at *2 (citing *Prudential Ins.,* 148 F.3d at 316). Furthermore, a finding of superiority is further supported by the fact that the district court does not need to consider "potential management problems at trial … because this is a settle-

ment class." *Id.* (citing *Windsor,* 521 U.S. at 620, 117 S.Ct. 2231). Therefore, the superiority of a class action, rather than several individual lawsuits, is apparent in this case, in which tens of thousands of individuals seek relief for violations of federal and state law regarding a nearly identical debt collection letter.

Because the court finds that the plaintiffs have met the four requirements for Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as the two requirements of Rule 23(b)(3)—predominance and superiority, it will approve the proposed class. The court will now address the terms of the proposed settlement.

### C. *Preliminary Approval of the Class Settlement*

Having reached a tentative settlement of this class action, the parties are seeking this court's preliminary approval of the proposed settlement pursuant to Rule 23(e). *See* Fed.R.Civ.P. 23(e).[9] In order for a court to grant approval of a class action settlement, the court must determine whether the proposed settlement is fair, adequate, and reasonable. *See Collier,* 192 F.R.D. at 184 (citing *General Motors,* 55 F.3d at 785; *Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118 (3d Cir.1990); *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956, 965 (3d Cir.1983)). The Third Circuit in *Girsh v. Jepson,* 521 F.2d 153 (3d Cir.1975) identified certain factors which the court should consider in determining whether a proposed settlement agreement is fair, adequate, and reasonable:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

---

seeking a substantial monetary judgment of $453,500. Given the significance of this monetary award and the fact that the plaintiffs did not seek an injunction in their original complaint, this court finds that money damages predominate over the injunctive relief and therefore a finding of class certification under Rule 23(b)(2) is inappropriate.

**9.** Rule 23(e) states:

A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs. *See* Fed.R.Civ.P. 23(e).

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendants to withstand a greater settlement;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery;

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 157 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir.1974)). "The proponents of the settlement bear the burden of proving that these factors weigh in favor of approval." *General Motors*, 55 F.3d at 785. Of particular importance in reaching this determination is whether the settlement was not the product of a collusive agreement between the parties to the action. *See Lake v. First Nationwide Bank*, 900 F.Supp. 726, 732 (E.D.Pa.1995) ("[D]ue to the risk that a collusive settlement agreement may be reached that fails to satisfy the class, a reviewing court must ascertain that the settlement was the product of 'good faith, arms length negotiations' before granting its approval") (quoting *Fisher Bros. v. Cambridge–Lee Indus., Inc.*, 630 F.Supp. 482, 487 (E.D.Pa.1985)). *See also General Motors*, 55 F.3d at 785; NEWBERG ON CLASS ACTIONS, § 11.25, at 11–37 (3d ed.1992).[10]

The settlement terms provide for HHL and its insurance carrier, Lexington Insurance Company, to establish a settlement fund of $453,500.[11] Class members who do not opt-out and who submit claims forms will receive a pro-rata share of the settlement fund after the settlement administrator deducts the costs for notifying class members and for attorney fees and administrative costs. In addition, a permanent injunction will be entered against the defendant, preventing future use of the collection letter at issue in this case. Finally, the class representative, Robert F. Fry, Jr., may be awarded, subject to court approval, up to $1,300 for his individual claims as well as an incentive award of up to $1,000 for work performed on behalf of the class to be paid out of the settlement fund.

Class members may opt-out of the settlement prior to final approval of the settlement agreement. Those individuals who opt-out will have their claims dismissed without prejudice following a final order and judgment of the court. Those class members who participate in the agreement will release defendant Hayt, Hayt & Landau from further liability regarding the collection letter at issue in this case. Class members, as well as the public, may file objections in writing to any of the settlement terms and will have an opportunity to be heard regarding those objections.

Attorneys fees will be paid out of the settlement fund and will not exceed $150,000 or approximately 33% of the overall settlement. Notice of these requested fees will be provided to individual class members who will be given an opportunity to be heard on the issue. However, regardless of any objections to these attorney fees or the terms of the settlement agreement, plaintiff's counsel are required to submit to the court a final accounting of attorney fees and the court will independently review that amount. *See General Motors*, 55 F.3d at 819–20 (stressing importance of judicial review of attorney fee awards in class action settlements). If the court approves attorney fees and costs of less than $150,000, the balance will be returned to the settlement fund for distribution to the

---

**10.** *Newberg on Class Actions,* quoting the *Manual on Complex Litigation,* reads in relevant part:
 If the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that notice be given to the class members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement.
 NEWBERG ON CLASS ACTIONS, § 11.25, at 11–37.

**11.** From this settlement fund of $453,500, attorneys fees up to $150,000 and notification fees up to $80,000 will be deducted.

class.[12]

The Third Circuit has instructed the district courts to carefully scrutinize a settlement agreement that satisfies the class representative's individual claims in full and pays a significant amount in cash to the lawyers who represented the class, but provides for only a token award to the class members. *See General Motors*, 55 F.3d at 794–95. Agreements of this type not only raise public suspicions about the purpose and value of the class action mechanism, but also generate questions regarding the possibility of collusion between the parties. In this case, because the court finds that the FDCPA specifically allows a higher recovery for the claims sought in the litigation by the class representative than the claims asserted for the class members, and because the settlement favorably satisfies other *Girsh* factors, the court finds that the settlement agreement meets, if just barely, the fairness, reasonableness, and adequacy requirements for granting preliminary class approval.

A close look at the FDCPA supports the court's finding. Under the FDCPA, a named plaintiff may recover actual damages, *see* 15 U.S.C. § 1692k(a)(1), statutory damages, *see* 15 U.S.C. § 1692k(a)(2)(A), as well as a pro-rata share of the entire recovery, *see* 15 U.S.C. § 1692k(a)(2)(B).[13] That Congress intended to allow a named representative to aggregate his claims is illustrated by comparing the FDCPA with the Truth–in–Lending

("TILA") Act, on which the FDCPA was modeled and which, in clear contrast, does not allow the class representative to recover any amount in excess of his pro-rata share of the common fund.[14]

In light of this express Congressional authorization, the court in this case will grant preliminary approval to the recovery by the plaintiff of his individual claim under the FDCPA for up to $1,300. The court will require, however, that the plaintiff submit a specific proffer of damages showing the actual amount of those damages. The court recognizes that this showing of actual damages may be less than the $1,300 preliminarily agreed to by the parties. If the actual damages are less than $1,300, the court will also consider granting plaintiff statutory damages up to $1,000, as provided under section 1692k(a)(2)(a), for the difference between the actual damages incurred by the plaintiff and the $1,300 actually agreed upon by the parties under the settlement agreement. The court will not, however, permit an individual award under the CPL, as that statute, unlike the FDCPA, does not specifically allow a greater recovery for a class representative than the pro-rata share available for the other members of the class. *See* 73 P.S. § 201–3. If the total amount of damages incurred by plaintiff is determined to be less than $1,300, the difference between $1,300 and the damage award approved by the court

12. The balance of the funds not spent on notifying class members also shall be added to the settlement fund for distribution to class members.

13. Section 1692k reads as follows:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such a person as a result of the failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000

or 1 per centum of the net worth of the debt collector;

. . . .

15 U.S.C. § 1692k.

14. Section 1640 of the Truth–in–Lending Act reads as follows:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, . . . is liable to such person in an amount equal to the sum of—

. . . .

(2)(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor.

will be added to the common fund for distribution to the class.

 With regard to the $1,000 incentive award, it is true that this type of award is "not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D.Pa.2000). Nor is it necessarily compelled in each case. Rather, to be entitled to an incentive award, plaintiff must show: (1) the risks that the named plaintiff undertook in commencing class action; (2) any additional burdens assumed by named plaintiffs but not unnamed class members; and (3) the benefits generated to class members through named plaintiff's efforts. *In re U.S. Bioscience Securities Litigation*, 155 F.R.D. 116, 121 (E.D.Pa. 1994) (footnotes omitted). "In deciding whether such an award is warranted, [other] relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.1998).

In this case, although the class representative did not show that he undertook any special "risk" in bringing the action, it is true that the action did generate a common fund and will result in the entry of equitable relief which will benefit the public. Thus, provided that he can show that he spent time or money in pursuit of this litigation, the court will permit recovery of up to $1,000 in an incentive award. In order to be eligible for this incentive award, the plaintiff is to submit an affidavit showing with particularity the time spent and the tasks performed. The class representative should also suggest the hourly rate at which he shall be compensated. In determining the hourly rate, the court will consider the class representative's lost wages as a result of his involvement in this litigation, evidence of compensation paid to other representatives in other class actions, and other relevant community rates.

Another factor supporting the reasonableness, adequacy, and fairness of the proposed settlement is the fact that further litigation would not improve the class members' recovery in this case. Under the FDCPA, a plaintiff in a class action may recover actual damages and/or statutory damages. 15 U.S.C. § 1692k(a)(1) and (2)(B). In a class action, statutory damages are limited to $1,000 to the named plaintiff and the lesser of 1% of the defendant's "net worth" or $500,000 for all of the class members. 15 U.S.C. § 1692k(a)(2)(B). In a recent case involving the meaning of "net worth" under the FDCPA, "net worth" was determined to be "book net worth or balance sheet net worth." *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir.2000). At the hearing in this matter, the defendant presented evidence indicating that its net worth is $137,000. Tr. 8/18/00 at 50.[15] Consequently, in the event that this case were brought to trial, the greatest possible recovery for statutory damages under the FDCPA would be $2,370: $1,000 for the named plaintiff and $1,370 for the class members. Because actual damages are extremely difficult to obtain in overshadowing cases such as this one, *see* Tr. 8/18/00 at 62, the defendant will pay the class members a substantially larger judgment than may otherwise be permitted under the FDCPA.

Further, an appreciation of the risks of establishing liability on the plaintiff's claims support the proposed settlement. In this case, the defendants are paying a higher award than allowed under the FDCPA because the award includes both damages under the FDCPA and the CPL. However, it is far from clear whether the putative class members could recover under the CPL. First, a question exists whether the CPL claim, under Pennsylvania's choice of law principles, applies to consumers residing outside the state. Second, it is unclear whether a violation of the Debt Collection Trade Practices Regulations, incorporated into the CPL, allows statutory damages in cases in which

---

**15.** In the settlement agreement the parties agree "[t]hat the 'net worth' of HHL for the purposes of 15 U.S.C. § 1692(a)(2)(B) is less than $200,000.00." Joint Motion for Certification of Settlement Class and to Approve Settlement and Class Notice, Exhibit A, Settlement Agreement (doc. no. 19).

no actual damages are proven. Third, a question now exists whether with the passage of the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 et seq. ("FCEUA"), which repealed the Debt Collection Trade Practices Regulations, the FCEUA has retroactive effect. Unlike the six-year statute of limitations under the Regulations, the FCEA established a two-year statute of limitations for CPL claims. See 73 P.S. § 2270.5(b). If the FCEA has retroactive effect, then the plaintiff's CPL claim would bar recovery for some of the class members. Fourth, there is a question whether the CPL, which protects consumers from the collection of debts incurred in the purchase of goods or services, also applies when the debt is a loan for the purchase of consumer goods. Given the lack of guidance in the Pennsylvania appellate courts to decide these issues, it is likely that this case, if tried successfully by the plaintiffs, would be subject to lengthy and costly appeals before any class members would recover any of the benefits provided in this agreement.

Finally, defendant's limited ability to withstand a greater settlement range also weighs in favor of settlement. The defendant's insurance carrier, Lexington Insurance, Co., has asserted a defense under a reservation of rights of the CPL claim. In addition, Lexington Insurance, Co. claims that no coverage is available for statutory damages, punitive damages, or attorneys fees if plaintiff's successfully obtained such an award at trial. Obtaining greater insurance coverage, therefore, would require yet further litigation. Finally, the only insurance contract available to pay any of the class members claims requires that the class members report such claims between July 1, 1999 to July 1, 2000. Consequently, any claims greater than those provided under the settlement would not be covered by the defendant's insurance company. Given the lack of insurance coverage and in light of the defendant's "net worth" of only $137,000, the defendant would be unable to pay a judgment less than the amount the defendant is able to pay under the settlement and for which there is coverage under the insurance policy, in the event the case goes to trial and the plaintiff succeeds on all of his claims. Because the defendant's insurance company has agreed to settle this case for $453,00, this settlement agreement provides the best opportunity to resolve these claims efficiently and provide legitimate recovery for all of members of the class. On balance, application of the *Girsh* factors ultimately supports approval of the proposed settlement agreement.

### D. Notice to the Class

■■■■ The last issue this court must address is whether to approve the proposed notice provisions for informing class members of the conditional approval of the class, see Fed.R.Civ.P. 23(c)(2), and of the preliminary approval of the settlement. See Fed. R.Civ.P. 23(e). In this case, the settlement was tentatively approved so notice of the certification and of the proposed settlement may be considered together. See Collier, 192 F.R.D. at 186 (citing Manual for Complex Litigation § 30.212, at 226). Adequate notice is important in securing due process of law for the class members, as class members are bound by the judgment entered in the action. See Matsushita Electric Indus. Co. v. Epstein, 516 U.S. 367, 378, 379, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). When the plaintiff knows the names and addresses of the class members or can easily determine such information through reasonable efforts, individual notices must be sent to each class member. See Fed.R.Civ.P. 23(c)(2); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 318–19, 70 S.Ct. 652. In the event specific names and addresses are unattainable, however, "notice by publication will suffice under Rule 23(c)(2) and under the due process clause." Carlough v. Amchem Prods., Inc., 158 F.R.D. 314, 325 (E.D.Pa. 1993) (citing Mullane, 339 U.S. at 317–18, 70 S.Ct. 652). Due process does not require that every class member receive actual notice, and, therefore, failure to receive notice is not fatal to the plan. See In re Prudential Insurance Company of America Sales Practices Litigation, 177 F.R.D. 216, 233 (D.N.J. 1997) (citing Mullane, 339 U.S. at 317, 70 S.Ct. 652); see also Manual for Complex Litigation § 30.211, at 223.

At the hearing held on August 18, 2000 and in the proposed settlement agreement submitted with the parties' joint motion for preliminary approval, counsel for the plaintiff represented that each identifiable class member would receive notice of the settlement through first-class mail. Tr. 8/18/00 at 34. In addition, plaintiff's counsel informed the court that notice would also occur through one-time publication in USA Today and on the Internet through the Business Wire. *Id.* The notification will describe the litigation and the amount of the attorneys fees, as well as each putative class member's right to object or support the settlement and or object or support the amount of attorney's fees.

Although the court accepts this representation and agrees that the methods proposed and agreed upon by the parties are reasonable in that they will provide sufficient notice to the class members under the circumstances in this case, two slight revisions in the content of the notification announcement are needed. One revision is needed to give putative class members sufficient information to make a reasonable decision to opt-out of the class. The notice currently does not inform its readers that the number of potential class members may be as high as 52,000 individuals. Such information is necessary for a putative class member to weigh the pros and cons of accepting the settlement or choosing to opt out of the class. Consequently, this court requires that the following language be included in Section II of the notification announcement: "it is estimated that the number of class members may be as high as 52,000 members." [16] A second revision is needed regarding the named plaintiff's incentive award. Because the parties at the hearing were unable to state with any precision the amount of time and effort that the named plaintiff was involved in this litigation, this court revises Section IV of the notice to read that class counsel "will also apply for representative plaintiff to be reimbursed for actual time and costs as may be

approved by the court in an amount not to exceed $1,000, in recognition of his efforts." With these revisions in the notification, this court agrees that the agreement will provide sufficient notice to the class members.

The court concludes that the class proposed by plaintiff shall be conditionally certified for purposes of settlement. In addition, the court preliminarily approves the proposed settlement with the slight revisions noted above. Furthermore, the form of notice, as revised by the court, meets the requirements of Rule 23, and, therefore, the notice shall issue to the class members.

---

16. Because the settlement class is approximately 45,000 to 52,000 individuals, each class member will receive a pro-rata share from the settlement fund after payment is made for notification and a determination of attorneys fees is established. In the event that all of the potential class members file claims under this agreement, the pro-rata share could be quite small. The class members are entitled to such information in order to evaluate whether to accept or reject this settlement agreement.